## LUSK et al v. PUGH.

No. 7290—Opinion Filed June 13, 1916.

Rehearing Denied Sept. 8, 1916.

Opinion on Rehearing, Nov. 26, 1918.

(159 Pac. 855; 176 Pac. 80.)

**1. Railroads — Crossing Accidents — Injury.**

In order to give a right of action to an individual for the violation of an ordinance of a city requiring railroad company to constantly keep a flagman at a street crossing, a causal connection between the failure of the company to comply with such ordinance and the injury received must be shown.

**2. Same—Noises.**

The railroad company has the right to make all usual noises incident to the moving of its cars, and a person, in a buggy, at a public crossing, whose horse becomes frightened at the noise of the movement of the cars, runs away, and such person is injured, has no cause of action against the railway company, unless the acts of its servants who caused the noise which frightened the animal were unnecessarily made, under such circumstances as to constitute lack of ordinary care, or such noise was recklessly or wantonly made, or done to frighten the horse and done in the discharge of such servants' business for the company.

**3. Same—Evidence—Jury Question.**

The evidence in the case carefully examined, and found not sufficient to sustain the verdict rendered.

(Syllabus by Collier, C.)

Error from District Court, Grady County; Frank M. Bailey, Judge.

Action by George Pugh against James W. Lusk and others, receivers of the St. Louis & San Francisco Railroad Company. There was a judgment for plaintiff, and defendants bring error. Reversed and remanded.

W. F. Evans, R. A. Kleinschmidt, and J. H. Grant, for plaintiffs in error.

Charles Mitschrich and J. A. Lenertz, for defendant in error.

Opinion by COLLIER, C. This is an ac-

tion brought by the defendant in error against the plaintiffs in error to recover for personal injuries sustained by the plaintiff at a crossing in the city of Lawton, Okla. Hereinafter the parties will be designated as they were in the trial court.

The negligence averred in the petition is that said defendants negligently and carelessly ran one of the locomotives used by them in operating said railroad at a high rate of speed into and against a string of cars on the left-hand side of plaintiff and on the west side of said highway, and with a great amount of noise, kicked, pushed, and bumped said cars up to, and upon, and across said highway at said crossing as aforesaid, and negligently and carelessly omitted, while approaching said crossing to give any signal by ringing a bell or sounding the steam whistle, or otherwise; that said defendants had a flagman at said crossing, as provided for in the city ordinance as above set out, but said flagman was not at his post of duty, and was not in sight of plaintiff, and carelessly failed to give plaintiff any signal either to stop or proceed, or any warning or signal of the approach of said engine or cars, or of the danger of the horse becoming frightened that might be occasioned by the sudden bumping together of said engine and cars as aforesaid, by reason whereof plaintiff was unaware of the approach of said locomotive and string of cars as aforesaid; that solely by reason of defendants said negligence and the negligence of said flagman in being absent from his post of duty and in failing to signal to plaintiff approaching danger, and in failing to signal him to stop, and by not remaining constantly on duty as required by the ordinance of the City of Lawton, as above set out, and without any fault or negligence on the part of the plaintiff, said violent and sudden kicking and bumping of the cars and locomotive as aforesaid frightened and scared the plaintiff's horse. In short, the allegations of negligence consisted of the absence of the flagman from his post of duty and the noise incident to the switching of said cars.

The material evidence in the case shows that the tracks of the St. Louis & San Francisco Railway Company run practically east and west through the city of Lawton, and intersect Sixth street at right angles. In addition to the main track there are three additional tracks that intersect Sixth street, paralleling the main line and south of the main line. On the west side of the street there is no sidewalk, and it was usual and customary for cars to be stored on the side tracks up to the sidewalk line, and some-

times beyond that line. The main traveled portion of Sixth street at the crossing is about 40 feet wide. The defendants maintain gates and a watchman at this crossing.

On the date plaintiff was injured, he approached the crossing from the south, riding in a buggy drawn by one horse. A train crew was making up a freight train on the main line, and had placed one car east of Sixth street, with the west end of the car extending out across the sidewalk but not extending into any part of the traveled portion of Sixth street. Two other cars were standing west of the traveled portion of Sixth street, on the main line, with the east end of the cars about on a line with the sidewalk, if the same had extended across the railroad tracks. Another two cars were kicked down and coupled onto the two stationary cars west of Sixth street. Just before this coupling was made, plaintiff had reached a point 15 or 20 feet south of the south tracks and had stopped his horse for the purpose of looking and listening for approaching trains. Just before the coupling of the last car was made, plaintiff started forward toward the tracks, and as the cars were coupled together, his horse became frightened at the noise and stopped suddenly, throwing plaintiff and his wife and child onto the dashboard, and throwing his wife out of the buggy. The horse then turned to the right, circled around and ran back down Sixth street in the direction from which they had come. As the buggy was being turned, plaintiff was thrown out, and sustained the injuries described in the petition.

The evidence further shows that by an ordinance of the city of Lawton the railroad company was required to at all times keep a flagman at said crossing. Just before and at the time said accident occurred, said flagman at the said Sixth street crossing was in the shelter house, which was located along defendnat's north track and just east of the sidewalk on the east side of said crossing.

There was also evidence tending to support the averments of the petition as to the injuries sustained by the plaintiff. The evidence is in conflict as to the volume and character of noise made by the defendant in coupling up said cars.

Upon the conclusion of plaintiff's testimony, defendant demurred to the evidence of plaintiff, which demurrer was overruled and duly excepted to.

Among other instructions, the court gave the following instruction No. 6:

"And you are instructed, gentlemen of the jury, that it is the duty of a railroad company to observe such provisions of the city ordinances providing for the presence of flagmen at its railroad crossings, and it is the duty of such flagmen to advise travelers approaching such crossing of trains about to cross such railroad crossing, or to advise travelers of any other such movement of trains which might reasonably and ordinarily be expecterd to frighten horses of travelers, and of conditions occasioned by the movement and direction of trains which reasonably and ordinarily would be expected to frighten the horses of such travelers, and a failure to do so would constitute an act of negligence for which said railway company would be liable, if injury resulted therefrom."

The case was tried to a jury, and resulted in a verdict for the plaintiff in the sum of $1,350. Timely motion was made for a new trial, which was overruled, duly excepted to, and judgment rendered in accord with the verdict. To reverse said judgment the defendants bring error.

The negligence complained of is a failure of the flagman to be in his place, and thereby violating the ordinance of said city, requiring the flagmen to be constantly on duty at said crossing, and the noise made by the coupling of said cars. In order to give a right of action for the violation of an ordinance of a city, causal connection must be proved between the injuries received by the plaintiff and the act of the defendant in violating the ordinance. Wilson v. Louisville & N. R. Co., 146 Ala. 285, 40 South. 941, 8 L. R. A. (N S.) 988.

"This question has arisen with great frequency in Indiana, where it is generally held, in accordance with Wilson v. Louisville & N. R. Co., that it is necessary to show the causal connection between the violation of an ordinance and the injury. Thus in Baltimore & O. S. W. R. Co. v. Coneyer, 149 Ind. 524, 48 N. E. 355, 49 N. E. 452, it was held that a complaint must show that the failure to comply with the statutory requirements in running its train was the proximate cause of plaintiff's injury, in order to permit the latter to recover, and that the mere allegation that such violation was the proximate cause was not sufficient. And to the same effect was the decision in Lake Erie & W. R. Co. v. Mikesell, 23 Ind. App. 395, 55 N. E. 488." Note. 8 L. R. A. (N. S.) 988.

The proximate cause of an event must be understood to be that which, in the natural and continuous sequence, unbroken by any independent cause, produces that event, and without which that event would not have occurred. Sherman and Redfield on Negligence, § 25; Western R. Co. v. Mutch, 97 Ala. 194, 11 South. 894, L. R. A. 316, 38 Am. St. Rep. 179; Louisville & N. R. Co. v. Quick, 125 Ala. 553, 28 South. 14; Stanton v. Louisville & N. R. Co., 91 Ala. 382, 8 South. 798.

In St. L. & S. F. R. Co. v. Lee, 37 Okla. 545, 132 Pac. 1072, 46 L. R. A. (N. S.) 357, it is said:

"In every case involving actionable negligence there must have been a duty on the part of defendant, a failure to perform that duty, and an injury or damage resulting by reason of such failure."

In St. L. & S. F. R. Co. v. Darnell, 42 Okla. 394, 141 Pac. 785, it is held:

"* * * Although the defendant may be guilty of negligence, yet to make it liable to a person for injuries received, it must be further shown that the negligence had a causal connection with the injury; that is, that it was the proximate cause of the injury."

In St. L. & S. F. R. Co. v. Hess, 34 Okla. 615, 126 Pac. 760, Judge Brewer says:

"It is a well-established rule that in a suit for damages for personal injuries, although the defendant may be shown to have been negligent in some manner, yet, unless the negligence so shown was the proximate cause of the injury complained of, no recovery can be had on account of such negligence."

It is very clear from the evidence in this case that the frightening of the horse, whose action resulted in the injury received, was by reason of the noise made by the coupling of the cars, and that the failure of the flagman to be at his post of duty was not negligence which in any wise contributed to bringing about the injuries complained of. Under said instruction No. 6, hereinbefore set out the jury was authorized to find for the plaintiff by reason alone of the absence of said flagman from his post of duty, an instruction unauthorized in the instant case, and consequently reversible error. It therefore follows that the only possible act of negligence on the part of the defendant which would entitle the plaintiff to recover was the noise made by the coupling of said cars, provided the making of such noise can legally be determined to be actionable negligence.

The authorities are in conflict as to whether the making of unnecessary noises in the operation of a railroad train or cars, which frightens and causes a horse to run away,

and thereby inflicts injuries upon a person, is actionable negligence, but the weight of authority is that such noise must not only be unnecessary, but be made under such circumstances as to constitute lack of ordinary care. Omaha & R. Valley R. Co. v. Brady, 39 Neb. 27, 57 N. W. 767; Southern Ry. Co. v. Pool, 108 Ga. 809; 34 S. E. 141; Weller v. Lehigh Valley Ry. Co., 225 Pa. 110, 73 Atl. 1024, 24 L. R. A. (N. S.) 1202, 133 Am. St. Rep. 861; Effinger v. Ft. Wayne Traction Co., 175 Ind. 175, 93 N. E. 855, 33 L. R. A. (N. S.) 123.

If the noise made by the operation of the railroad company in handling its cars or train, which causes a horse to become frightened and run away, and thereby inflict injuries upon one, is the act of the company's servants recklessly or wantonly done, or done for the purpose of frightening the horse, and done in the discharge of such servants' business for the company, such acts of the servants constitute actionable negligence.

"The right of railroad company to operate its road, includes the right to make all the noises incident to the movement and working of its engines, as the escape of steam, and to give the proper and usual admonitions of danger, by blowing the whistle, ringing the bell, etc.: and a person, whose horse, in a buggy, at a public crossing, becoming frightened at the noises or movements of the train, runs away and is injured, has no cause of action against the railroad company, unless the acts of its servants, which caused the fright of the animal, were wanton and malicious, and done in the discharge of their business for the company." Stanton v. Louisville & N. R. Co., 91 Ala. 382, 8 South. 798, and authorities cited.

In the instant case the damage resulted from the fright of the horse, and the fright of the horse was caused by the noise of handling the cars in switching. The railroad company had the right to make all the usual noises incident to the moving of its cars, and it was therefore incumbent upon the plaintiff, to entitle him to recover, to show that the making of the noise complained of was unnecessarily made under such circumstances as to constitute lack of ordinary care, or was recklessly or wantonly done, or done with the intention of frightening the horse. There is no evidence of this character in the record.

We are of the opinion that the demurrer to the evidence of plaintiff should have been sustained.

Under the view we take of the case it is unnecessary to review any other of the errors assigned.

Inasmuch as the plaintiff may possibly be able to show liability under the views expressed in this opinion, this cause should be reversed and remanded.

By the Court: It is so ordered.

### On Rehearing.

On second motion for rehearing. Denied, and former opinion of the Supreme Court Commission approved.

PER CURIAM. After a carefull examination of the record and the briefs and arguments of counsel upon rehearing the court is convinced that the opinion by Mr. Commissioner Collier formerly handed down is correct and should be approved.

In their petition for rehearing counsel for defendant in error insist that they did not rely upon the violation of a city ordinance as an element of negligence. In this we think counsel is mistaken. The petition of plaintiff sets up a city ordinance which requires the railway company to keep a flagman constantly on duty at the Sixth street crossing, and alleges:

"Said defendants had a flagman at said crossing as provided for in the city ordinance above set out, but said flagman was not at his post of duty, and was not in sight of plaintiff, and he negligently and carelessly failed to give plaintiff any signal either to stop or proceed, or any warning or signal of the approach of said engine or cars, or of the danger of the horse becoming frightened, that might be occasioned by the sudden bumping together of said engine and cars as aforesaid, by reason whereof plaintiff was unaware of the approach of said locomotive and string of cars set out."

And the petition concludes as follows:

"That solely by reason of the defendant's negligence and the evidence of said flagman in being absent from his post of duty, and in failing to signal to plaintiff of the approaching danger, and failing to signal him to stop, and by not remaining constantly on duty as required by the ordinance of the city of Lawton, as above set out, and without any fault or negligence on the part of plaintiff, said violent and sudden bumping and kicking of the cars and locomotive as aforesaid frightened and scared the plaintiff's horse so that said horse instantly and violently lunged and whirled around, overthrowing plaintiff's buggy and violently threw plaintiff, his wife and little son out upon the ground with such violence and force as to fracture plaintiff's right arm, and otherwise greatly bruised, wounded and injured plaintiff in his body."

From these excerpts it seems quite clear to us at least one of the grounds of negligence relied upon by plaintiff consisted of a violation of the city ordinance in question.

The commission formerly correctly held that there was no causal conection shown between the failure of the company to comply with the ordinance and the injury received by the plaintiff. The commission also correctly held that the plaintiff had no cause of action against the railway company for the reason that it did not appear that the acts of its servants which caused the noise, which frightened the animal, were unnecessarily made under such circumstances as to constitute a lack of ordinary care; or that such noise was recklessly and wantonly made or done to frighten the horse.

It is true that there was some testimony to the effect that the noise made by the coupling of the cars was louder than usual, or louder than ordinary, but evidence of this sort amounted to no more than the mere conclusion of nonexpert witnesses who admittedly had never engaged in railroad work of any kind, and who admittedly had no knowledge what ever of the effect or force necessary to the coupling of cars or of the volume of noise necessary for the proper performance of such work under different circumstances and conditions.

This we think is not sufficient to raise an issue of fact for the jury as against the positive testimony of the experienced train crew to the effect that the switching was being done in the ordinary and usual manner, and that the noise being made was only such as is ordinarily produced in the proper performance of this class of work.

Discussing a somewhat similar situation this court, in St. L. & S. F. Ry. Co. v. Gosnell, 23 Okla. 588, 101 Pac. 1126, 22 L. R. A. (N. S.) 892, says:

"In arriving at such conclusion, and that the jar caused by the stopping of the train was not ipso facto negligence, and hence the proof insufficient to take the question of negligence to the jury, we are not unmindful of the testimony of the passengers as to the character of the stop, but the same has no weight with us for the reason that the probative force thereof is nil, are mere expressions of opinion, and should not be considered in determining the question of the negligence of the defendant. As to such expressions we can say as was said of similar expressions of witnesses in Guffey v. Railway Co., 53 Mo. App. 466, where the court said: 'We do not think these expressions of the witnesses are of any value whatever, or state as much as a scintilla of evidence.' In

Young v. Mo. Pac. Ry. Co. [(Mo. App.) 84 S. W. 175], supra, the court said: 'it is true the plaintiff and his three witnesses testified their opinion to the effect that the "train made a heave forward just like lightning," that "it was an awful hard jerk," and that "the jerk was the most severe I have ever experienced." Of course, the manifestly hyperbolical expression of opinion that "the train heaved forward just like lightning" as evidence cannot be given the weight of a feather. The other expressions of the witnesses prove nothing. The jerks or lurch may have been "awful hard," or the "severest" the witness had ever experienced, and yet not that extraordinary or unusual jerk or lurch attributable to unskillful handling of the engine, or something of the kind. * * *' "

For the reasons stated, the order granting a rehearing is set aside. The second petition for rehearing is denied and the former opinion of the Supreme Court Commission approved.

All the Justices concur.