**SCHAFF, Rec., v. BOLAND.**

No. 15695—Opinion Filed Dec. 8, 1925.

1. **Railroads — Station Accident — When Failure to Give Signals Not Negligence.**

Negligence cannot be based upon the failure of those in charge of a train to ring the bell and sound the whistle, where the plaintiff pleads and proves that, while in position of safety, he knew the train was approaching.

2. **Same—Noises of Train Frightening Team —Liability.**

Where plaintiff predicates negligence of a railroad company on the emission of steam and unusual noises in the operation of its engine, frightening plaintiff's team and causing personal injury to plaintiff, he must plead and prove by the proper quantum of evidence that such noises which frightened his team were unnecessarily made, under such circumstances as to constitute lack of ordinary care, or that same were recklessly or wantonly made, or done to frighten his team, since a railroad company has the right to make the usual noises incident to the moving of its trains.

3. **Same—Absence of Negligence.**

The evidence in this case, under the foregoing rules, is not sufficient to make a case of primary negligence against defendant.

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Seminole County; Geo. C. Crump, Judge.

Action by W. C. Boland against Charles E. Schaff, receiver of Missouri, Kansas & Texas Railway Company, for personal injuries. Judgment for plaintiff, and defendant appeals. Reversed and remanded for new trial.

M. D. Green and H. L. Smith, for plaintiff in error.

Pryor, Stokes & Carver, C. L. Hill, and Ira J. Banta, for defendant in error.

Opinion by ESTES, C. Parties will be referred to as they appeared in the trial court, inverse to their order here. Plaintiff, Boland, had judgment against said receiver for $2,999 for personal injuries. The following facts are either admitted by plaintiff, or stand uncontradicted in the record: That at Konawa, at the time of the injuries complained of, the main line of receiver's railroad track ran proximately north and south, the passenger and freight depot being immediately west of the main line; that at some distance north of the depot a so-called house track or switch was built from the main line, extending north and parallel with the main line and running just west of the

depot; that the space between the said main line and house track, in which said depot was located, was 30 feet or more; that a car of salt was spotted on said house track just north of the depot, and that according to the custom, same could have been unloaded either from the west side, being the side facing the town of Konawa, or from the east side; that plaintiff, more than 60 years of age, backed the team and dray of his son to the east side of said car of salt, being between said main line and said side track, facing the north, and wrapped the lines on some convenient place of the dray, dismounted, and went into said car, and with the assistance of a Mr. Dutton was unloading the salt from the car to the dray; that the receiver's freight train coming from the south had been stopped and parked south of the depot about the noon hour in October; that according to the custom and needs of defendant, the engine and tender were disengaged from the train and had been run along the main track to a coal chute north of the depot for cleaning and coaling prior to the time the plaintiff so drove his team in between the tracks; that plaintiff knew that it was customary for the engine to be taken to the coal chute for such purpose, having drayed around said depot a year or more; that the accident occurred when said engine was backed from said coal chute past said depot and team to the south to be connected again with the train. Plaintiff testified when asked if he heard the engine backing down:

"Yes, sir; I heard it. Well, I was expecting it to back down, so far as that is concerned. I was expecting—I don't pretend to say that I heard it until I got to the door, but I was expecting it, and was watching for it, always do, and always watch my team and watch the engine when around there. * * * I got my lines, and the engine popping off and by the time they got started, the engine was done gone past the corner of the depot when my team ran off, * * * the engine was running, and that team, as soon as it got a chance, just as soon as the engine passed them, they run this way. I got hold of the lines * * * just before they struck the post."

The post referred to was a telegraph pole northeast of the main line, which was struck by the wagon, dislodging plaintiff therefrom, and inflicting the personal injuries upon him for which he sues.

The negligence alleged against defendant is that:

"Without warning, the said defendant ran a locomotive and tender down the main track of said right of way; that the said locomotive and tender ran down said track without warning to this plaintiff; that no bell was rung or whistle sounded as a warning

to this plaintiff; that the engineer or fireman in charge of said locomotive left the pet cocks of said engine open, so that the same made a noise like firearms being discharged and emitting steam from the same."

The negligence may be summarized as omission to give signals and commission of unusual noises like firearms.

1. In C., R. I. & P. Co. v. Barton, 59 Okla. 109, 159 Pac. 250, it is held:

"Negligence cannot be based upon the failure of those in charge of a train to ring the bell and sound the whistle, where the plaintiff pleads and proves that, while in a position of safety, he knew the train was approaching."

The admission of plaintiff, that while he was unloading the sacks of salt from the car to the dray, he was expecting and knew the engine would be backed so close to his team, while standing thus untied and unattended, precludes recovery for any primary negligence of defendant in failing to give signals. Plaintiff must have known this engine was approaching. Moreover, his own witness testified positively that the bell was ringing. It follows that if plaintiff made a case of primary negligence, it must be predicated upon alleged unusual noises.

2. It is admitted, or undisputed, that there was a so-called "pop valve" or safety valve on top of the engine, which valve operated automatically when there was a heavy head of steam for the safety of the engine and employes; that same was required by law to be so maintained; and that explosions from such valve made a popping noise. It is not contended by plaintiff that defendant receiver's employes had willfully surcharged the engine with steam to cause the pop-off valve to operate at this particular time, or otherwise acted wantonly as to it. In Lusk v. Pugh, 71 Okla. 182, 159 Pac 855 (on rehearing, 71 Okla. 182, 176 Pac. 80), it is laid down:

"The railroad company has the right to make all usual noises incident to the moving of its cars, and a person in a buggy at a public crossing, whose horse becomes frightened at the noise of the movement of the cars, runs away, and such person is injured, has no cause of action against the railway company, unless the acts of its servants who caused the noise which frightened the animal were unnecessarily made, under such circumstances as to constitute lack of ordinary care, or such noise was recklessly or wantonly made, or done to frighten the horse, and done in the discharge of such servants' business for the company."

The alleged primary negligence of the defendant must be predicated on emission of steam and unusual popping sounds from the cylinder cocks on the side of said engine, and as to these, plaintiff must bring himself within said rule—that they were unnecessarily made under such circumstances as to constitute lack of ordinary care, or were recklessly and wantonly made to frighten plaintiff's team. Referring to this crisis in the events, plaintiff testified:

"I was paying attention to the horses and lines. I do not know what the engine done: Some said it commenced running. I don't know. By the Court: Q. Now, did that steam come from the top or the side? A. It came from the side, the best I could tell. * * * It came out from the engine toward the horses. * * * The steam was on the side of the engine. · It was coming toward the horses. · When the engine first started popping off, I was in the car, had commenced loading the dray. I never heard any bell ring."

The undisputed testimony of two or more of the servants of the receiver, who operated said engine, is that the cylinder cocks on the side are under the control of the enginemen by means of a lever; that such lever had not been touched at the time of this accident, or while said engine was backing to the said train; that no steam whatever escaped from the side cylinder cocks; that the engine was being backed at about the rate a man would walk and was in fair condition of repair for operating; that there was no occasion for operating the side cocks at that time; that the pop cock on top of the engine did pop automatically — the servants having no control over the same. Plaintiff introduced no evidence otherwise that the noises of which he complained were unnecessarily made or that they were made under circumstances constituting lack of ordinary care, or were recklessly or wantonly made to frighten his horses. There is no other evidence tending to show that the alleged unusual noises were emitted from the cylinder cocks, but perhaps other circumstances tending to show that they came from the pop cock.

3. Assuming that said testimony of plaintiff has some probative value to support the theory that the noises came from the cylinder cocks, there is no fact or circumstance from which it may be inferred that the noises were unusually made, or that they were made under circumstances constituting lack of ordinary care, or were recklessly or wantonly made to frighten the team. Plaintiff complains of unusual noises like the discharge of firearms, admitting that he knows very little, if anything, about the operation or construction of a locomotive engine. The testimony of the qualified servants of de-

fendant is undisputed that such · popping noises like the discharge of firearms came from the pop valve on top of the engine, which operated automatically and was required by law so to be maintained; that it was this valve that was in operation at the time in question; that the cylinder cocks were not in operation at the time, and if they had been, they did not make popping noises like the discharge of firearms. We are therefore constrained to conclude that the plaintiff has failed to make a case of primary negligence against de endant, rendering it unnecessary to consider further questions raised in this appeal.

Let · the judgment be reversed, and the cause remanded for a new trial.

By the Court: It is so ordered.

Note.—See under (1) 33 Cyc. 784. (2) 33 Cyc. pp. 781 (Anno), 867, 870, 877; anno. 33 L. R. A. (N. S.) 123; 1 R.· C. L. pp. 1207-1212; 1 R. C. L. Supp. p. 363.