**CITY OF TULSA v. WELLS.**

No. 10586—Opinion Filed June 8, 1920.

Rehearing Denied July 13, 1920.

(Syllabus by the Court.)

**1. Torts — Joint Tortfeasors — Necessary Parties Defendant.**

Where several persons unite in an act which constitutes a wrong to another, the law permits all the wrongdoers to be proceeded against jointly, also leaves the party injured at liberty to pursue any one of them severally, or any number less than the whole, and to enforce his remedy regardless of the participation of the others. The rules regarding remedies which are applied to breaches of contract are obviously inapplicable, but the rule is that the party injured may bring separate suits against the wrongdoers and proceed to judgment in each, and no bar arises as to any of them until satisfaction is received.

**2. Municipal Corporations — Safety of Streets—Municipal Responsibility.**

A municipal corporation is charged with the duty of maintaining its streets in a reasonably safe condition for travel, and the duty rests primarily, as respects the public, upon the corporation; and the obligation to discharge this duty cannot be evaded, suspended, or cast upon others by any act of its own.

**3. Municipal Corporations — Defective Streets—Action for Injuries—Effect of Former Action Against Street Railway, a Joint Tortfeasor.**

In a legal action founded upon tort, against a municipal corporation, based upon the neglect by the defendant of the duty imposed by law to keep its streets in a reasonably safe condition for the protection of the traveling public, where the testimony showed that such neglect of the defendant was equally chargeable to a street railway company, and that the plaintiff had brought an action against said company for damages therefor, and the cause had been tried and resulted in a verdict in favor of the defendant, from which the plaintiff had appealed, and the appeal was then pending, and the defendant in the instant case pleaded the verdict and judgment in the trial court as a bar, held (a) the doctrine of election of remedies did not apply; and (b) that the judgment in the former action was not final as to such action, the doctrine of lis pendens applying.

**3a. Same—City Charter Requiring Written Notice of Injury—Failure to Give Notice—Excuse.**

While a provision of a city charter providing that, before the city shall be liable for damages, the person injured or some one in his behalf shall give the mayor or city auditor notice in writing of such injury within 30 days after the same has been received, stating where and how the injury occurred and the extent thereof, may be valid, the failure to give such notice may be excused on account of the incompetency of the injured party by reason of infancy or effect of such injuries, rendering him mentally and physically incompetent to give such notice.

**3b. Same—Notice of Defective Streets—Charter Provisions—Validity.**

Where a city charter provides that the city shall not be liable for damages for injuries to person or property arising from or occasioned by any defect in any public street, highway, or grounds, or any public work of the city unless the specified defect causing the damage or injury shall have been actually known to the mayor or city engineer by personal inspection for a period of at least 24 hours prior to the occurrence of the injury or damage, unless the attention of the mayor or city engineer shall have been called thereto by notice thereof, in writing at least 24 hours prior to the occurrence of the injury or damage, and proper diligence has not been used to rectify the defect after actually known or called to the attention of the mayor or city engineer as aforesaid, held, (a) such provision so far departs from reasonableness as to amount to a denial of justice, and is therefore void, and may not be enforced by the courts of this state, and, (b) that a city is chargeable with notice of a dangerous defect in its streets, although actual notice may not have been brought home to it, and (c) if the evidence shows that such a state has continued for a sufficient length of time so that the city, by exercising ordinary care, might have learned of its condition, and not to know such fact would be negligence on the part of the city, and a charge to the jury to that effect was properly given.

**4. Appeal and Error—Review—Questions of Fact—Verdict.**

In a civil action triable to the jury, where there is competent evidence reasonably tending to support the verdict of the jury, and no prejudicial errors of law are shown in the instructions of the court, or its rulings on law questions presented during the trial, the verdict and the finding of the jury will not be disturbed on appeal.

**5. Trial—Demurrer to Evidence—Directing Verdict.**

The defendant's demurrer to the evidence or motion for an instructed verdict at the close of the evidence, is overruled where there is any competent evidence before the jury reasonably tending to support the verdict.

**6. Appeal and Error—Review—Excessive Verdict—Personal Injuries.**

In an action for personal injury a verdict will not be set aside for excessive damages, unless it clearly appears that the jury committed some gross and palpable error, or act-

ed under some improper bias, influence, or prejudice, or have totally mistaken the rules of law by which damages are regulated.

Error from District Court, Tulsa County; Ernest B. Hughes, Judge.

Action by Paul Wells, a minor, by Catherine Wells, his mother and next friend, against the City of Tulsa for damages for personal injuries. Judgment for plaintiff and defendant brings error. Affirmed.

Edward P. Marshall, for plaintiff in error.

H. B. Martin, Roy F. Ford, and J. G. Thompson, for defendant in error.

JOHNSON, J. This is an appeal from the district court of Tulsa county, Hon. Ernest B. Hughes, Judge.

On May 10, 1918, this action was commenced in the district court of Tulsa county, Oklahoma, by Paul Wells, a minor, by Catherine Wells, his mother and his next friend, as plaintiff, against the city of Tulsa, as defendant. For the sake of convenience the parties will be hereinafter referred to as they respectively appeared in the trial court.

The plaintiff brought this action to recover for certain personal injuries which he alleged that he received upon the streets of the city of Tulsa on the 14th day of July, 1917, by reason of the negligence of the defendant; the allegations contained in his amended petition being, in substance:

That upon said East Third street, in the city of Tulsa between Boston avenue and Main street, there are laid and maintained parallel tracks of the Tulsa Street Railway Company, and that said East Third street is paved, and that between the rails of said tracks of the street railway company and for a space of ten or twelve inches on the outside of the rails of said tracks the paving consists of brick, and it is alleged that said brick paving was constructed in said street in a rough and uneven condition a long time prior to July 14, 1917, at the instance of the defendant and under its direction, supervision, and control; and that on the said 14th day of July, 1917, the brick paving on both sides of the north rail of the north track of the said railway company on said Third street, at a certain point where the injury is alleged to have occurred, was in a rough, uneven, dangerous, and unsafe condition, and that the defendant city had failed to maintain the said paving in a reasonably safe condition, and that the condition of the paving at said place was known to the city of Tulsa, or could have been discovered by said defendant by the exercise of ordinary care on its part, and which conditions were unknown to the plaintiff. It is alleged that the plaintiff, while riding along said street and between the tracks of said railway company, on a bicycle, about eight o'clock p. m.

on the said 14th day of July, 1917, attempted to turn out of said street and off of said tracks to avoid an approaching fire truck which was coming westward on said street; that in so attempting to turn his bicycle across the north rail of the track and out of the path of the fire truck, the front wheel of plaintiff's bicycle came in contact with the rail and uneven paving; that he was thereby caused to swerve and turn, and as a result thereof the plaintiff was thrown to the pavement; and that in immediately attempting to regain his feet and move out of the path of the truck, the truck ran into and over the plaintiff, injuring him permanently and seriously. The plaintiff asks damages against the said city of Tulsa by reason of the negligence of the said city as aforesaid, in the sum of $100,000.00. He alleges that he exercised due care and caution for his safety.

The defendant, for its answer, denies each and every allegation in the plaintiff's petition contained; and the defendant for further answer says that if the plaintiff was injured at the place, he was guilty of contributory negligence. in this, that he neglected to use ordinary, reasonable care for himself to protect himself from injury, in that he knew of the alleged defect in the paving and neglected and failed to avoid it; second, that he endeavored to ride and drive his bicycle across the depression in said track at an angle and in such manner that he knew or should have known by the exercise of ordinary and reasonable care that he would likely cause his bicycle to overturn, and that the negligence of the plaintiff was the direct and proximate cause of the injury and directly and proximately contributed thereto.

For further answer to the plaintiff's petition the defendant says that on the 2nd day of August, 1917, this same plaintiff filed his action against the Tulsa Street Railway Company in the district court of Tulsa county, Oklahoma, the same being No. 6543, and that said cause was tried to the court and jury in said court, and resulted in a verdict in favor of the defendant, and that said judgment is in full force and effect and has never been vacated, modified, or reversed, and it pleads and relies upon the litigation and judgment in the said cause as an estoppel and a bar against plaintiff's right to recover herein.

The cause was tried to the court and jury, which resulted in a verdict in favor of the plaintiff in the sum of $22,000, upon which the court rendered judgment to reverse which the defendant commenced this proceeding in error by filing its petition in error in this court on May 3, 1919, with copy of case-made attached, which petition in error contains 51 specifications of error, which are summarized as follows: (1) The court erred in overruling the amended demurrer of the

defendant to the petition of the plaintiff; (2) erred in overruling the objection of the defendant to the introduction of evidence by the plaintiff in support of the allegations made in his petition; (3) erred in permitting the plaintiff to introduce certain incompetent, irrelevant, and immaterial evidence over the objection of the defendant; (4) erred in allowing and permitting plaintiff to amend his petition during the trial of the cause; (5) erred in overruling the demurrer of the defendant to the evidence offered by the plaintiff upon the trial of said cause; (6) erred in refusing to withdraw from consideration of the jury certain incompetent evidence; (7) in refusing to permit defendant to introduce certain evidence; (8) in refusing to direct the jury to return a verdict in favor of the defendant; assignments from 9 to 31, inclusive—erred in refusing to give requested instructions of the defendant Nos. 1 to 30, inclusive; assignments from 32 to 43, inclusive —erred in giving instructions 1 to 12, inclusive; (44) erred in overruling the defendant's motion for new trial; (45) in rendering judgment in said cause against the defendant; (46) in matters of law upon the trial of said cause; (47) that the verdict of the jury was not sustained by the evidence and is contrary to law; (48) that the judgment of the court is not sustained by the evidence and is contrary to law; (49) that the verdict is excessive and indicates the result of passion and prejudice upon the part of the jury; (50) that the damages awarded to plaintiff are excessive and appear to have been given under the influence of passion and prejudice; (51) the action of the plaintiff was premature and could not be maintained and the court erred in refusing to dismiss the same upon the application of the defendant.

These assignments of error are discussed by counsel for plaintiff in error in their brief under 9 subheads, the first of which is as follows:

"The judgment of the district court of Tulsa county in favor of the Tulsa Railway Company in the action brought against it by the plaintiff is a bar to this suit."

This and the second subhead will be considered together. Concerning this proposition, they say in their brief:

"One of the principal questions necessary to be determined in this case is whether a judgment in favor of the Tulsa Street Railway Company in the action heretofore commenced by plaintiff against it, which involved the same issues of negligence which are involved in this case, operates as a bar to the plaintiff's right to recover in this suit."

They say:

"Although it is a general rule that a municipality cannot assign or transfer to any person its liability for a failure to maintain its streets in a reasonably safe condition for public travel, still, it can and did, in this instance, impose upon the railway company this duty, as part consideration for the granting of the franchise, and for a failure to perform the covenants which are contained in the franchise contract, the railway company would become liable to any person injured because of its negligence in this respect. It is a fundamental rule that where any person creates a dangerous condition in a public thoroughfare by reason whereof some traveler is injured, the municipality may become liable for a failure upon its part to keep the highway in a reasonably safe condition for public travel and use and where the traveler recovers judgment against the municipality in such a case, the latter has remedy over against the person creating the dangerous condition. In other words, had Paul Wells sued the city of Tulsa in the first instance and recovered judgment against it, the city of Tulsa would then have the right to maintain an action against the railway company for the damage which it suffered by reason of the railway company's failure to abide by the conditions of its franchise obligation. But when the plaintiff has elected to sue the railway company for its primary negligence, relying upon its negligence and failure to comply with the provisions of its franchise, and has failed in recovery, then he cannot be permitted to recover judgment against the city for this identical negligence. If such were the case, the municipality would be deprived of its remedy over against the railway company, because if it attempted a recovery against the latter, the railway company may plead res adjudicata as to it upon this cause of action. Also, the railway company stands in privity with the municipality under the franchise contract. The duty of the railway company, under the franchise, was the same duty in all respects, as that of the city. To say that each of the two might be sued on account of negligence of the railway company to perform its primary duty under the law, to properly maintain the paving and thoroughfare which it used in the operation of its business and its duty under the provisions of the franchise (which is expressly relied upon in plaintiff's petition against the railway company), would be to say that the rule of res adjudicata is abrogated where it has always heretofore applied in favor of one of two parties standing in legal or contractual privity when the other has been absolved from liability in an action brought by the third person complaining. There is, and can be, no question concerning the right of the city to contract with the railway company for the maintenance of the paving laid for the convenience of the company. It was for the accommodation of the street car company that brick paving was laid and the city may legally lay upon it the obligation of maintaining such paving in such a condition that

the public would not be hazarded by the use thereof. And there can be no question that the railway company might assume such obligation and bind itself thereby, on account of any damages which might be sustained by a dereliction of this contractual obligation. Surely if it failed in this respect, it could be made to respond in damages to the city where the latter was rendered liable because of a breach of the former's duty."

The provisions of ordinance 184, granting the franchise, and involved herein, are as follows:

"It is further provided that whenever the rails of said grantee's track traverse any street upon which the pavement is constructed, it shall be the duty of said grantee, after laying its tracks, to restore said pavement where injured or destroyed, taken or removed to its previous condition," and,

"Further to maintain such pavement in good condition during the time such track may remain in and upon streets or avenues, except when the duty of the maintenance of said pavement may rest upon any contractor constructing such pavement under the employment or direction of the city of Tulsa."

And it is further provided:

"That the grantee may construct along their tracks detachable curbs or blocks of sufficient width to enable said grantee to take up and repair their tracks or rails, without disturbing any pavement of cement or asphaltic character used on any street."

Counsel contend that when plaintiff has sued the railway company for its primary negligence in its failure to comply with the provisions of its franchise, and has failed in recovery, then he cannot be permitted to recover judgment against the city for this identical negligence, this contention being based upon what is known as the doctrine of election of remedies. This court has frequently had occasion to pass upon this question. The most recent decision upon this question wherein this court reiterated the rule is in the case of Vose v. Penny et al., 78 Okla. 238, decided at the present term of court, wherein Owen, C. J., speaking for the court, said:

"An election of remedies is the choosing between two or more different and co-existing modes of procedure and relief allowed by law on the same state of facts. The basis for the application of the doctrine is in the proposition that where there is, by law or by contract, a choice between two remedies which proceed upon opposite and irreconcilable claims of right, the one taken must exclude and bar the prosecution of the other. The doctrine of election of remedies is, therefore, generally regarded as being an application of the law of estoppel, upon the theory that a party cannot, in the assertion or prose-

cution of his rights, occupy inconsistent positions. 9 R. C. L. 956. In First Trust & Savings Bank v. Bloodworth, 70 Oklahoma, 174 Pac. 545, it was said: 'When the law gives several means of redress or kinds of relief predicated on conflicting theories, the election of one and the prosecution to final judgment operates as a bar to the subsequent adoption of any other.' To the same effect is Herbert v. Wagg, 27 Okla. 674, 117 Pac. 209; Robb v. Vos, 155 U. S. 13, 39 L. Ed. 52; Fowler v. Bowery Sav. Bank, 113 N. Y. 450, 10 Am. St. Rep. 479, 4 L. R. A. 145; Cohoon v. Fisher, 146 Ind. 583; Gaffney v. Megrath, 23 Wash. 476. 63 Pac. 520; Gentry v. Bearss, 88 Neb. 742, 130 N. W. 428."

The rule is further illustrated in 9 R. C. L. 958, wherein it is said:

"The doctrine of election of remedies applies only where there are two or more remedies, all of which exist at the time of election, and which are alternative and inconsistent with each other, and not cumulative, so that, after the proper choice of one, the other or others are no longer available * * * Another class of cases exists where there is but one cause of action, but in which different or alternative remedies may be pursued. It is permissible to follow these remedies or reliefs independently, even in some cases to judgment, although but one satisfaction can be had."

To the same effect, 15 Cyc. 257, wherein it is said:

"In order that election must be made the party must have at his command different co-existing remedial rights, which are consistent, and not analogous, consistent, and concurrent."

It seems clear to us that the facts in the instant case do not bring it within the rule as by counsel announced, because the plaintiff's right under the law to a separate judgment against the city and traction company did not proceed upon opposite and irreconcilable claims of right, but, upon the contrary, his right against each was identical, and therefore consistent and concurrent. If the allegations in his petition in each case are true, he was entitled to a separate judgment against each, but to one satisfaction only.

In 14 R. C. L. 53, it is said:

"While it is generally conceded that public necessity, and the nature of their obligations, require that municipal corporations should be held liable for the safety of their thoroughfares, the doctrine of pari delicto, though frequently invoked against them, is not applied because of their constructive default when they have sought reimbursement from the actual authors of the trespass or nuisance which has caused them to be sued, and the general rule is that when such corpora-

tions have been held responsible for injuries to persons lawfully using the streets in a city, because of defects in the streets or sidewalks caused by the negligence or active fault of a property owner, or in general whenever they have been compelled to pay damages for a wrongful act perpetrated by another in public highways, they become entitled to maintain an action against such person for indemnity from the liability which the wrongful act has brought upon them."

In 13 R. C. L. 318, it is said:

"According to the weight of authority, a person or corporation required by contract, franchise, municipal ordinance, or statute to perform the duty resting on a municipal or quasi municipal corporation of keeping its streets and highways in repair, and safe for the passage of the public, is liable directly to a party injured by a defect caused by the failure to perform such duty, and the same has been held to be true under a similar contract with the state. In such cases the duty is considered as having been imposed for the benefit of every individual whose rights as one of the public might be specially affected, and in this way the party injured is held to be in privity with the promisor to the extent of giving him such right of action, or in other words, the contractor is held to have assumed a duty to the public. This rule is often applied in cases where railroad or street railway companies agree to keep streets in repair as a condition of their right to use them, or are required to do so by their charters, or by a statute or ordinance. And it has been held that a provision in an ordinance imposing such a condition, that the railway company shall respond to the city and save it harmless from damage resulting from acts and negligence of the railway company, merely secures to the city the right to be reimbursed in the event that its own liability, which, under the law, still exists, shall be enforced, and does not confine the railway company's liability to the city alone."

It will be observed from the statement of counsel that they do not controvert the doctrine of the joint and several liability to the plaintiff of the city and the traction company announced by the authorities cited supra, but in support of their contention that the judgment in favor of the defendant traction company in the former action of the plaintiff is a bar to this suit, they say:

"But when the plaintiff has elected to sue the railway company for its primary negligence, relying upon its negligence and failure to comply with the provisions of its franchise, and has failed in recovery, then he cannot be permitted to recover judgment against the city for this identical negligence. If such were the case, the municipality would be deprived of its remedy over against the railway company, because if it attempted a

recovery against the latter, the railway company may plead res adjudicata as to it upon this cause of action. Also, the railway company stands in privity with the municipality under the franchise contract. The duty of the railway company, under the franchise, was the same duty in all respects as that of the city. To say that each of the two might be sued on account of the negligence of the railway company to perform its primary duty under the law, to properly maintain the paving and thoroughfare which it used in the operation of its business and its duty under the provisions of the franchise (which is expressly relied upon in plaintiff's petition against the railway company), would be to say that the rule of res adjudicata is abrogated, where it has always heretofore applied in favor of one of two parties standing in legal or contractual privity when the other had been absolved from liability in an action brought by the third person complaining."

In support of this contention, counsel cite the decisions of this court in the following cases, likewise the decisions of other courts of last resort in similar cases: C., R. I. & P. R. Co. v. Austin, 43 Okla. 698, 144 Pac. 1069; St. L. & S. F. R. Co. v. Williams, 55 Okla. 682, 155 Pac. 249; C., R. I. & P. R. Co. v. Brooks, 57 Okla. 163, 156 Pac. 362; K. C., M. & S. R. Co. v. Leuch, 60 Okla. 19, 158 Pac. 1146; C., R. I. & P. R. Co. v. Reinhart, 61 Okla. 72, 160 Pac. 51; St. L. & S. F. R. Co. v. Dancy, 74 Oklahoma, 176 Pac. 209; Callahan v. Graves, 37 Okla. 503, 132 Pac. 474.

Upon examination of the cases cited it is disclosed that each was an action arising upon a contractual relation, such as joint makers of obligations in the nature of bonds of indemnity in attachments and garnishment proceedings and sheriffs' indemnifying bonds, etc., and in cases where the relation of principal and surety, principal and agent, master and servant, indemnitor and indemnitee, existed, and frequently in cases where the aggression complained of was a separate and distinct act of the agent or servant, or cases where all of the parties were charged jointly with committing the act complained of and upon the trial thereof the evidence disclosed that some one or more of said parties were innocent, and in such circumstances the rule announced by counsel is correct and the authorities cited would be in point; but in the instant case the facts alleged and proven upon the trial are materially different, this being an action in tort, and the record disclosing that each of the alleged wrongdoers has been sued by the plaintiff in separate actions, the first of which was against the traction company alone, in which a trial to a jury was had and a verdict returned in favor of the defendant, from which the plaintiff appealed and the cause

was pending on his appeal at the time of the trial in the instant case. In these circumstances the rule is as announced by Gould on Pleadings (6th Ed.) 390, as follows:

"If several persons join in committing a trespass, or tort of any kind, the party injured may generally, at his election, sue them all jointly—or each, or either of them, in a several action—or any number of them, less than the whole, together. For torts, in which several join, may be considered, in regard to the wrongdoers either as wholly joint, or wholly several—or as joint in respect to part of them, and several, as to the others; since the act of any one of the wrongdoers may be regarded in law, either as his own sole act, or as the act of either, or of all, or of any number of them."

In Cooley on Torts (2nd Ed.) 153, it is said:

"But while the law permits all the wrongdoers to be proceeded against jointly, it also leaves the party injured at liberty to pursue any one of them severally, or any number less than the whole, and to enforce his remedy regardless of the participation of the others. While the wrong is joint, it is also in contemplation of law several. * * * The rules regarding remedies which are applied to breaches of contracts are obviously inapplicable here. * * * The case of wrongdoers is wholly different; the party injured has not assented to their action; he has not agreed what the consequences shall be if one or more shall trespass upon his rights, nor is he morally under obligation to pursue his remedy in any particular form because of that form being most to their convenience. Whatever course is seemingly most for his interest, it is just that he should be at liberty to select. Nor, after suit is brought, can there be any apportionment of responsibility, whether the suit be against one or against all. Each is responsible for the whole, and the degree of his blamableness as between himself and his associates is immaterial. When the contributory action of all accomplishes a particular result, it is unimportant to the party injured that one contributed much to the injury and another little; the one least guilty is liable for all because he aided in accomplishing all."

Mr. Cooley, after reviewing the rule announced in the English case of Brown v. Brooton, which held that to recover a judgment in a suit against one wrongdoer is a bar to any further action against others, and saying "that except in Virginia and Rhode Island, it has not met with favor in this country," at page 159, says:

"It was expressly disapproved by the Supreme Court of New York, when presided over by Chief Justice Kent, and was pronounced by him to be a departure from the earlier English decisions. The rule laid down by that eminent jurist, which has since been generally followed in this country, is that the party injured may bring separate suits against the wrongdoers and proceed to judgment in each, and that no bar arises as to any of them until satisfaction is received."

The Kansas City Court of Appeals, in the case of Sutter v. Kansas City (Mo.) 119 S. W. 1084, where the precise question was involved, held that the former action could not be pleaded in bar, and in paragraph 1 of the syllabus used this language:

"A railroad company, tearing up the brick pavement in a street and piling the brick in the parkway between the curb and the sidewalk, indemnified the city against loss from injuries caused by such brick. A pedestrian, injured by tripping over a brick on the sidewalk, sued the railroad company, and judgment went for the company, and the pedestrian then sued the city for its negligence in leaving the brick on the sidewalk. Held, that the judgment in the first action was no defense to the action against the city, on the principle that, where the party charged primarily with the wrong is found not to be guilty, the co defendant, whose liability is dependent on the guilt of the first party, is also discharged, since the duty of the city to keep its sidewalks clear to prevent injuries to pedestrians was a primary duty, and independent of any relation with the railroad company."

This holding was cited with approval by the Supreme Court of Missouri in the case of Sutter v. Metropolitan Street Railway Company, 188 S. W. 65, construing the same accident, and involving the same state of facts. This suit was brought by the husband for his damages growing out of the same accident. He recovered $4,500. The judgment was affirmed on appeal. (208 S. W. 851.)

The contention of counsel that the judgment in favor of the defendant in the case of the plaintiff against the traction company is a bar to this action, cannot be sustained for the additional reason that the record discloses by stipulation that such judgment had not become final when this case was tried, as an appeal therefrom had been taken by the plaintiff to this court. The rule in such cases is found in Black on Judgments, vol. 2, sec. 510, and is as follows:

"In many states it is held that the pendency of an appeal suspends the operation of the judgment in respect to all its usual effects, and hence the judgment, not becoming final while the appeal remains undetermined, it cannot be pleaded in bar, in the interval, nor used in evidence as an estoppel."

Such was the holding of the Supreme Court of California in Di Nola v. Allison et al., 76 Pac. 976; also, in the case of Purser v. Cady,

52 Pac. 489. This rule was adhered to by this court in the case of Stuart v. Coleman, 78 Okla. 81, the second paragraph of the syllabus of which is as follows:

"Where the law gives a right of review to an appellate court, all persons are necessarily charged with notice thereof, and lis pendens is adequate to give a litigant protection until he can pursue all the remedies to which he is entitled in the action, and therefore, although a judgment of final decree has been entered, the cause is deemed to be pending while the right to prosecute it further by appeal remains."

In view of the authorities cited, we are clearly of the opinion that the trial court committed no error in holding that the judgment of the court in the action brought by the plaintiff against the traction company was not a bar to his right to recover in the instant case.

The record discloses that plaintiff received the injuries complained of on East Third street, in the city of Tulsa, near the intersection thereof with Boston avenue; that said street was one of the principal business thoroughfares in the city, and was paved with asphalt except that portion thereof occupied by the Tulsa Street Railway Company by its tracks; that said traction company, at the time of the injury and for a number of years prior thereto, had maintained a double track along said street, and that part of the street occupied by the tracks of the traction company, between said tracks and between the rails thereof, and for about 12 inches outside of the outer rails of said track, was paved with vitrified brick; and that the company's tracks and pavement were placed there by the authority of the defendant city some time after the street had been paved by the city.

The plaintiff alleged and the evidence tended to show that said brick paving was constructed in said street in a rough and uneven condition, a long time prior to the date of the injury, at the instance of the defendant and under its direction, supervision and control, and that on the date of the injury the brick paving on both sides of the north rail of the north track of the said railway company on said Third street at the point where the injury occurred, and for some 25 feet along the track, had sunk from one and three-quarters inches to three and three-quarters inches below the top of the rail, and was in a rough, uneven, and dangerous condition, and that the defendant city had failed to maintain the said paving in a reasonably safe condition, and that the condition of the paving at said place was known to the said city of Tulsa, or could have been discovered by it by the exercise of ordinary care on its part,

and which condition was unknown to the plaintiff; that while riding along said street between the tracks of said railway company on a bicycle about 8 o'clock p. m. on said date, and without any negligence on his part being shown by the record, he attempted to turn out of said street and off the said tracks to avoid an approaching fire truck which was coming westward on said street at the rate of 25 miles per hour; that in so attempting to turn his bicycle across the north rail of the track and out of the path of the fire truck, the front wheel of plaintiff's bicycle came in contact with the rail and uneven paving; that he was thereby caused to swerve and turn, and as a result thereof was thrown to the pavement, and that in immediately attempting to regain his feet and move out of the path of the truck, the truck ran into and over him, injuring him permanently and seriously.

"A municipal corporation is charged with the duty of maintaining its streets in a reasonably safe condition for travel." 2 Dill. Mun. Corp. (4th Ed.) secs. 1028, 1029; Elliott, Roads and Streets, sec. 633; 1 Shearm. & Redf. Neg. (5th Ed.) 164-168; Crawfordville v. Smith, 79 Ind. 308; Indianapolis v. Doherty, 71 Ind. 5.

"As between a municipal corporation and the public, the duty rests primarily upon the corporation, and cannot be evaded or suspended by any act of its own." Logansport v. Dick, 70 Ind. 65; Robbins v. Chicago, 4 Wall. 657, 18 L. Ed. 427; St. Paul Water Co. v. Ware, 16 Wall. 566, 21 L. Ed. 485; Brusso v. Buffalo, 90 N. Y. 679; Goddard v. Harpswell (Me.) 30 Am. St. Rep. 373.

Judge Dillon in his work on Municipal Corporation (4th Ed.) sec. 1027, says on this subject:

"Whether the duty of maintaining the streets in a safe condition for public travel and use is specially imposed on the corporation or is deduced in the manner before stated, it rests primarily, as respects the public, upon the corporation; and the obligation to discharge this duty cannot be evaded, suspended, or cast upon others by any act of its own."

As to that part of the street occupied by the traction company, the law imposes the same duties and liabilities as those imposed upon defendant city. 13 R. C. L. 262; 36 Cyc. 1402, et seq.; Jenree v. Metropolitan St. R. Co. (Kan.) 121 Pac. 510. Therefore, the amended demurrer of the defendant to the petition of the plaintiff, and its objection to the introduction of the evidence in support of the allegations of the petition, and demurrer to the evidence of the plaintiff, were each and all properly overruled by the trial court.

The proposition contained in subhead 3 is:

"The alleged negligence of the defendant was not the proximate cause of the injuries of the plaintiff."

This contention is without merit, as that issue was determined by the jury under proper instructions of the court.

The proposition contained in subhead 4 is as follows:

"The notice required to be given by the city charter of the time, place, and manner in which the injuries of plaintiff were sustained, together with the description of the character and extent thereof, was not given prior to the time of the commencement of this action, by reason whereof this judgment was erroneously rendered and cannot be sustained."

The propositions contained in subheads 5 and 6 go to the same question and will be considered therewith. The provision referred to is as follows:

"Before the city of Tulsa should be liable for damages of any kind the person injured or some one in his behalf shall give the mayor or city auditor notice in writing of such injury within 30 days after the same has been received, stating specifically in such notice, when, where, and how the injury occurred and the extent thereof."

The defendant pleaded this provision of the charter as a defense, and the plaintiff in his amended reply alleged:

"Plaintiff for a further reply says, that art. 2, sec. 9 of the charter of the city of Tulsa, which is pleaded by the defendant in its answer as a bar to plaintiff's right to recover in this action, is unreasonable in its terms and provisions and is not applicable to the facts in this case and it is void as to the plaintiff in this case for the reason that if enforced it will deprive plaintiff herein of his property without due process of law, and it is therefore unconstitutional, and void under the Constitution and laws of the state of Oklahoma and the Constitution and laws of the United States of America."

He further alleged:

"Plaintiff for further reply states that notwithstanding that art. 2, sec. 9, of the charter of the city of Tulsa is unconstitutional and void as to the plaintiff, as hereinbefore set out, that he is informed, and verily believes, and therefore alleges the facts to be that on the —— day of August, 1917, within 30 days after the 14th day of July, 1917, the date plaintiff was injured as alleged in his petition, there was filed on behalf of plaintiff herein with the mayor and the city auditor of Tulsa, Oklahoma, a statement in writing setting forth when, where, and how the injuries complained of by plaintiff in the case occurred and the extent of his injuries, and the said notice in all respects complied with said provisions of the charter."

He further alleged:

"For further reply, plaintiff states that on the said 14th day of July, 1917, when he was injured as alleged and set out in his petition, he was a minor of tender years, to wit: the age of 13, and that on said date when he was injured as charged in his petition, his skull was fractured on each side and he immediately became unconscious and remained unconscious for a long period of time thereafter, to wit, more than 14 days, and that the plaintiff's mind ever since he was injured has been greatly affected and impaired, and he has been unable to read and concentrate his mind; that on account of his injuries as aforesaid and his infancy he has been at all times since the 14th day of July, 1917, and is now physically and mentally incompetent to superintend the preparation and filing of a notice or claim for damages against the city of Tulsa, and that no person was legally bound to serve said notice for him until his guardian was appointed, as hereinafter alleged. That on the 12th day of November, 1918, Catherine M. Wells, mother of the plaintiff, was duly appointed guardian of his personal estate, and the plaintiff further states that on the 12th day of November, 1918, another notice in writing stating how, when, and where plaintiff was injured and the extent of his injuries in compliance with said provision of the charter, was served upon the auditor of the city of Tulsa."

He further alleged:

"That the defendant, through its mayor, auditor, and various other agents, employees, and officers of the city of Tulsa, was informed and had knowledge of plaintiff's injuries immediately after he was injured and before 30 days expired, and duly investigated the facts with reference to the happening of the accident resulting in plaintiff's injuries, as described in his petition, also investigated the physical condition and employed physicians to treat plaintiff and paid the said physicians the sum of $350; that on account of said facts, the written notice required to be served became useless and of no avail and that defendant had waived the right to require plaintiff to show the filing of said notice, and was estopped from relying on said charter provision as a bar to this action."

Upon this question counsel for the defendant requested and the court refused the following instructions to the jury:

"Requested Instruction No. 29.

"You are instructed that even though you find and believe from the evidence that the defendant was negligent in the respect charged in the petition of the plaintiff and that such negligence, if any, directly and proximately caused the injuries alleged to have been sustained by the plaintiff, yet you are not to return a verdict in favor of the plaintiff unless you find and believe from the evidence, by a preponderance thereof, that

within 30 days after the date upon which the plaintiff is alleged to have been injured, that the plaintiff, or some one in his behalf, gave to the mayor or city auditor of said city of Tulsa, a notice when, where, and how the injury occurred and the extent thereof."

The court, however, instructed the jury upon that question, as follows:

"The jury are further instructed that it is provided by the charter of the city of Tulsa that before the city of Tulsa shall be liable for damages of any kind the person injured or some one in his behalf shall give the mayor or city auditor notice, in writing of such injury, within thirty days after the same has been received, stating specifically in such notice, when, where, and how the injury occurred and the extent thereof; and you are instructed that said provision of said city charter is valid and binding upon the plaintiff herein and that inasmuch as the plaintiff admits that no notice in writing was given by him or by any one in his behalf as provided for in said charter provision, you are instructed that the plaintiff, therefore, cannot recover in this action unless he brings himself within the exception hereinafter stated to you; and in this connection you are instructed that if you should find and believe from a fair preponderance of the evidence that the plaintiff was of such immature age or that his mental or physical capacity was so impaired by the alleged injury complained of that he woud not be of such mental or physical capacity to seek to know his rights or understand them if stated to him or apprehended the need of searching out or enforcing his legal remedies or if his mental capacity was such that he would not be reasonably expected to take any step to ascertain what his rights were, then in such event he would be excused from giving the notice required by the charter so long as such mental or physical incapacity existed or until a guardian was appointed for him, and in the event of such finding, then the fact that the notice was not given within the time required by the charter, would not of itself prevent the plaintiff from recovering; but, on the other hand, unless you should so find as above stated, by a fair preponderance of the evidence, then your verdict should be for the defendant."

In view of this state of the record, we hold, without deciding that the provision of the charter was a valid provision, that the facts pleaded as excusing him from a failure to comply with such provision, if true, were sufficient for such purpose; and as the case was tried and submitted to the jury upon that theory, and the jury having returned a general finding in favor of the plaintiff necessarily resolved that issue in his favor, we will not, therefore, disturb such finding. Rev. Laws 1910, sec. 6005.

The proposition embraced is subhead 7 of the defendant's brief is as follows:

"Neither the mayor nor city engineer actually knew of the alleged defect in the paving by personal inspection at least 24 hours prior to the occurrence of the injuries of the plaintiff, nor had the attention of such officers been called thereto in writing at least 24 hours prior to the happening of said accident, by reason whereof the defendant is not liable."

Concerning this proposition, they say in their brief:

"It is a fundamental rule that no municipality can become liable on account of a defect in its highway unless it had notice thereof, and neglected to make the necessary repairs within a reasonable time after the receipt of such notice. If no notice of the alleged defect in the way is had, the city is not obligated to compensate the person injured because of a failure upon its part to repair. And the knowledge or notice of the municipality of the defective condition of the street is a condition precedent to recovery by the person injured, because it is only after such notice or knowledge is had that the municipality can become negligent in failure to repair.

"Section 9, art. XI, of the Tulsa City Charter, provides as follows: 'The city of Tulsa shall never be liable on account of any damage or injury to person or property arising from or occasioned by any defect in any public street, highway, or grounds or any public work of the city, unless the specific defect causing the damage or injury shall have been actually known to the mayor or city engineer by personal inspection for a period of at least 24 hours prior to the occurrence of the injury or damage, unless the attention of the mayor or city engineer shall have been called thereto by notice thereof in writing at least 24 hours prior to the occurrence or damage and proper diligence has not been used to rectify the defect after actually known or called to the attention of the mayor or city engineer as aforesaid.' "

The record discloses that the written notice required by this provision was not given, but as to the first provision the record discloses that the brick paving where the accident occurred on the south side of the north rail of the north track of the traction company had become worn off inside of the rail or sunken below the rail, or both, to a distance of from one and three-quarters inches to three and three-quarters inches, and for a distance along the rail of something like 25 feet; that that condition had existed for a long time prior to the injury and had not been repaired at the time of the trial; photographs had been taken showing the condition and were offered in evidence upon the trial. C. P. Cline, a witness for defendant, was

offered, and he testified on direct examination that he had been connected with the defendant in an official capacity six years and six months, as inspector, inspecting paving, streets, and everything that it had; that he was acquainted with that portion of the street before described; that he had inspected the same about the time of the accident or some time after hearing of same, and that it was in the same condition as at the time of the accident and that no change had been made; that the pavement was about an inch and a half below the rail for about eight feet on the inside of the track and that the brick was worn down; that his office was in the engineer's office and he was working with the engineer and made his reports to the engineer. He testified on the trial of the cause of this plaintiff against the traction company, and concerning the testimony given at that trial he was asked:

"Q. Did you answer this question: 'Q. You are the only representative of the city administration that does go out and investigate these tracks?' A. I had one of the inspectors with me at the time, George Harris. Q. Now, Mr. Cline, that inspection was made just prior, was it not, to the accident occurring to this boy? A. I would not say for sure, but right somewheres about that time. Q. Now, then, Mr. Cline, I call your attention to this question: 'Q. Do you remember, Mr. Cline, the condition of that paving along the north rail of the north track at the point to which I have referred, during the middle of July, last year?' A. Well, I went over the tracks, just a ittle before that time; I don't know the dates; I could tell by going to the engineer's office; and I condemned the bad places in the track.' A. Yes, sir. Q. And you went over the track just prior to the time this boy was hurt? A. Well, just as I stated."

### On Redirect Examination.

"Q. Mr. Cline, did you report this particular piece of track and pavement thereabouts bad? A. No, sir.

### Re-Cross Examination.

"By Mr. Ford: Q. You didn't even find that piece of paving down there, did you? A. It wasn't bad enough, there was too many bad places to be fixed. Q. There were so many other worse than this that you didn't report it? A. Yes, sir."

Counsel for the defendant requested the following instruction, which was refused by the court:

"You are instructed that in no event are you to return a verdict in this case for the plaintiff unless you find and believe from the evidence, by a preponderance thereof, that for a period of at least 24 hours prior to the time when the injuries complained of are alleged to have been received by the plaintiff

the mayor or city engineer of the city of Tulsa, Oklahoma, actually knew, by personal inspection, of the alleged defective and unsafe condition of the paving and street at the point where the plaintiff is alleged to have been injured and reasonable diligence was not taken by defendant to correct the defect or unless you find from the evidence, by a preponderance thereof, that the attention of the mayor or city engineer of said city of Tulsa was called to the alleged defective and unsafe condition of the paving and street aforesaid, in writing at least 24 hours prior to the time when the injuries are alleged to have been sustained by plaintiff and that reasonable diligence was not taken by said city of Tulsa to correct such defect."

Whereupon the court gave to the jury instruction No. 7 in the general charge, which is as follows:

"You are further instructed that before the plaintiff can recover it must appear from the testimony, by a fair preponderance thereof, that the city of Tulsa, through its mayor or city engineer or both, at least 24 hours prior to the time when the injury complained of or alleged to have been received by the plaintiff was received, knew or by the exercise of reasonable diligence could have known of the unsafe condition of the street at the point where the plaintiff is alleged to have been injured, if you find from the evidence that it was unsafe."

The first part of the provision of the charter provided that the city should not be liable for "injury to person or property arising from or occasioned by any defect in any public street, * * * unless the specific defect causing the damage or injury shall have been actually known to the mayor or city engineer by personal inspection for a period of at least 24 hours prior to the occurrence of the injury or damage. * * *"

Concerning that provision of the charter, counsel for the defendant in error say in their brief:

"We think a mere reading of this portion of section 9 shows on its face it is unreasonable and, therefore, unconstitutional and void. If this provision of the charter is upheld, a person can never recover from a municipality for injuries caused by a defect in the street unless twenty-four hours before he gets hurt he goes either to the city engineer or the mayor and tells them that he expects to be hurt, or unless he is fortunate enough to find some one who called upon the mayor or the city engineer twenty-four hours before he got hurt and notified them of the defect. We do not know the author of this provision nor why it was written, but we think this practically imposes an impossibility upon a litigant. The court adopted the view of the foregoing section that actual knowledge for a period of twenty-four hours

either on the part of the mayor or the city engineer was not necessary, but that constructive notice would be sufficient. * * *"

With this contention of counsel we are in perfect accord, and additional reasons might be given in this connection. But we are not without authority to sustain this conclusion. This precise question was before the Supreme Court of the state of Washington in the case of Born v. City of Spokane, 68 Pac. 386, and in passing upon the question, Dunbar, J., speaking for the court, said:

"It also appears that there is a charter provision to the effect 'that the city shall not be liable for any damages for injuries sustained * * * in consequence of any street * * * or sidewalk being out of repair, unsafe, dangerous or obstructed * * * unless actual notice of such defect or want of repair shall have been given to the superintendent of streets or the city council twenty-four hours before such injury is sustained.' It is contended that, inasmuch as such notice was not given, the plaintiff cannot recover. It seems to us that this provision of the charter, upon its face, is unreasonable, and that to hold it good would be to couple a remedy with a frequently impossible condition. The person injured naturally could not give notice to the city before the injury, for in such an event he would be held to have had notice of the dangerous condition, and would be debarred from recovery. And if notice had been given by any one else, he would have no knowledge of such notice, and would be unable either to plead or prove it. As was said by this court in Durham v. City of Spokane (filed March 12, 1902), 68 Pac. 383, in discussing the reasonableness of a charter provision somewhat of this character, 'manifestly, unless it is to be held that the city can by this form of enactment prevent a recovery against itself for personal injuries, it cannot by requiring claims for injuries to be presented within a given time, prevent a recovery for troubles arising from such injuries which do not develop within the given time. But it is not the rule that a city may say whether or not it shall be held for personal injuries caused by its neglect of duty. Charter provisions of the character in question, whether enacted by the Legislature, or, as in the present case, by the city itself, are to be upheld only so far as they are reasonable and tend to the due administration of justice. When such provisions so far depart from reasonableness as to amount to a denial of justice, they are void.' The right to prosecute a claim for personal injuries is a common-law right, which has been sustained by this court in a long line of causes, extending from Sutton v. City of Snohomish, 11 Wash. 24, 39 Pac. 273, 48 Am. St. Rep. 847, down to the present time. Such cases have also held the city chargeable with notice, and if it is true that it is not the rule that the city may say whether or not it shall be held for personal injuries caused by its neglect of duty, as was said in the case just above cited, this provision must be held to be unreasonable and void. Hence the instruction complained of, that a city is chargeable with notice of a dangerous opening and trench or ditch, and its condition, in the sidewalk or street, although actual notice may not have been brought home to it, if the evidence shows that such a state has continued for sufficient length of time, so that the city, by exercising ordinary care, might have learned of its condition, and not to know such fact would be negligence on the part of the city, was properly given."

We think, as was said in the Washington case, supra, that this provision of the Tulsa charter so far departs from reasonableness as to amount to a denial of justice, and is therefore void. The testimony, as we have seen, tended to show that the defect in the street charged by the plaintiff had existed for a long time prior to the injury complained of, and that the jury was fully warranted in so finding. If so, the city, by exercising ordinary care, might have learned of its condition, and not to know such a fact would be negligence on the part of the city for which it would be liable under the law. This was the effect of the instruction of the court complained of, and we think it sufficiently advised the jury upon that question, and that the trial court committed no error in giving the same, nor in refusing the requested instruction of the defendant.

The provision contained in subhead 8 is as follows:

"The court below committed error in permitting the plaintiff to amend his petition and alleging that the brick paving was constructed on East Third street in a rough and uneven condition, a long time prior to the date of the occurrence of the accident, at the instance of the defendant and under its direction and supervision and control."

There is no merit in this contention. The statutes of this state permit such amendments in furtherance of justice to conform to the proof, leaving the question to the discretion of the trial court, and the action of the trial court in this respect will not be disturbed on appeal unless it appears from the record that there was a clear abuse of such discretion. Rev. Laws 1910, sec. 4790.

The proposition contained in subhead 9 is as follows:

"The verdict of the jury is clearly excessive in the amount of recovery awarded plaintiff and indicates that it was the result of passion and prejudice, and the court below erred in refusing a new trial."

The record discloses by the uncontradicted evidence that the plaintiff, at the time he re-

ceived the injuries complained of, was about 14 years of age; that he was a bright, studious, and industrious boy; that he had reached class A of the 7th grade in school; that he was a constant reader at home; that the time of the injury was during vacation, and he was working for a drug store as deliveryman by bicycle and was earning on an average of about $3 per day; that he was on a trip to deliver a package at the time he received the injury, traveling westward on East Third street. A business man standing in the front door of his business house was an eye witness to the accident. He testified that the plaintiff was· going west on the street upon his wheel at a moderate speed, and that a fire truck came sweeping up the street behind him at a rate of speed of from 25 to 30 miles an hour, and he saw the plaintiff look back and then turn to the right as alleged in his petition, and then when his wheel struck the north rail of the north track of the traction company it swerved, the wheel going suddenly to the southwest, throwing the plaintiff to the northwest over the rail; that the plaintiff attempted to rise immediately, and while he was upon his hands and knees he was struck and run over by the truck. The testimony is to the effect that there was no fire alarm, and the purpose for which it was making the run was not discussed in the evidence. The undisputed testimony is that the boy was picked up in an unconscious condition, taken immediately to the hospital, where he remained in such condition for a period of 14 days; that he was operated upon and portions of his skull were removed from each side of his head over the ears, and that his injuries resulted in complete paralysis of his left side, including his left shoulder, left arm, and left leg; that at the time of the trial that side and members were greatly drawn and reduced in size as compared with the corresponding right side and members. The testimony shows that since his injuries his eyesight has been greatly impaired and that he is unable to read for any length of time; that his vision is dim and blurred and reading causes severe headaches. His hearing, as a result of the injuries, has been greatly impaired. At the time of the trial he was about 15 years of age, and his mother testified that he was wholly unable to dress and undress himself; that she had to dress and undress him and prepare his food and place his food so that he could feed himself with his right hand. The physicians testified that his injuries were permanent and that he would never be any better, but would be a hopeless paralytic for the balance of his life, and he would continue to suffer physical pain as a result thereof.

The verdict of the jury assessed the plaintiff's compensation at $22,000. The defendant urges that such amount is excessive.

In St. Louis & S. F. R. Co. v. Hodge, 53 Okla. 462, 157 Pac. 60, citing many cases of this and other courts, this court said:

"A verdict will not be set aside in a case of tort for excessive damages, unless it clearly appear that the jury committed some gross or palpable error, or acted on some improper bias, influence, or prejudice, or have totally mistaken the rules of law by which the damage was regulated."

There is nothing appearing in the record that indicates that the jury in the instant case was influenced or actuated in any of the ways mentioned in the Hodge case, supra; but, upon the other hand, the record is unusually free from anything that would so indicate.

The instructions of the court as to the measure of damages was a clear statement of the law in relation thereto. The law awards compensation in such cases for injuries sustained, and as to the amount thereof the jury is the arbiter in the first instance, subject to the approval of the trial judge. The case comes to this court having passed successfully these tests. Twenty-two thousand dollars is a substantial amount, but in view of this record we can not say that it is more than that, or that it is exexcessive.

The judgment is affirmed.

RAINEY, C. J., and KANE, HARRISON, and PITCHFORD, JJ., concur.