### CITY OF DURANT v. ALLEN et al.

No. 7152—Opinion Filed Oct. 9, 1917.

(168 Pac. 205.)

(Syllabus.)

**1. Trial—Demurrer to Evidence —Directed Verdict—Evidence.**

Under the procedure and practice in this state in trials by jury, it is the well-established and settled law that, even though the testimony is undisputed, it should be so convincing that all reasonable men must draw the same conclusion from the facts proven, before the court is authorized to sustain a demurrer to the evidence, or direct a verdict.

**2. Master and Servant — Municipal Corporations — City's Operation of Electric Plant—Liability — "Machinery" — Contributory Negligence.**

Deceased was employed by defendant as first engineer of its electric light plant, which position carried with it, practically, control and management of its plant. While so employed, it was his duty to work at and near two tube tanks and the arc light switchboard. These tube tanks were about 18 inches square, placed side by side. The arc light switchboard was about 15 inches to the nearest tank, and had projecting 8 or 10 inches from the west side of it two electrodes, carrying constantly 2,300 volts of electricity, which furnished the current for defendant's arc lights. A wire, uninsulated, and the metal clips on top of these electrodes, which were unguarded, ran underneath these electrodes. On the west side of the building, about 4 feet from these electrodes, was a washbasin. It was deceased's duty to remove the tubes from these tube tanks daily and carry them to the washbasin and wash them, after which, to replace them in the tanks, and to clean up all the oil from the floor that had dripped from these tubes. It was while deceased was performing this duty that he came in contact with these electrodes, and received a shock of 2,300 volts of electricity, which, a few days thereafter, resulted in his death.

Held, that defendant, in operating its electric plant, assumed the same responsibilities to its employes therein as are assumed by private persons and private corporations operating similar plants, that, owing to the highly destructive agency in the manufacture of which defendant was engaged, it is held to a correspondingly high degree of care and foresight with regard to reasonable probable contingencies. Held, further, that these electrodes were "machinery" within the contemplation of Rev. Laws 1910, §. 3746, and a failure to properly guard the same is prima facie evidence of negligence on behalf of defendant, and that ordinary custom or usage in installing such machinery, unguarded, in disregard of a statutory duty, is not a test of negligence. Held, further, that the question of contributory negligence was fairly submitted to the jury, and such finding will not be disturbed.

Error from District Court, Bryan County; Jesse M. Hatchett, Judge.

Action by Vera Allen and others against the City of Durant. Judgment for plaintiffs, and defendant brings error. Affirmed.

Utterback & MacDonald and S. H. Kyle, for plaintiff in error.

Crockett & Fowler, for defendants in error.

TURNER, J. Defendant in error, Vera Allen, for the benefit of herself and her three minor children, sued the city of Durant, plaintiff in error, in the district court of Bryan county in damages for the negligent killing of Ernest Allen, her husband, the father of her three children. The petition alleged that deceased was killed through the negligence of defendant in failing to furnish him with a reasonably safe place to work and with reasonably safe appliances, in that certain of the dangerous machinery with which he had to work was not guarded as required by law. Defendant answered a general denial, and alleged contributory negli-

gence and assumption of risk. The cause proceeded to trial before a jury, and resulted in a verdict and judgment in favor of plaintiff for $2,000, from which defendant prosecutes this appeal.

It is urged by defendant that the court erred in overruling its demurrer to plaintiff's evidence. The facts established by the evidence are: Defendant owns and operates an electric light plant in the city of Durant, and is engaged in the manufacture and sale of electricity. Deceased was a man of about 24 years of age at the time of his injury on April 21, 1914, from which injury he died on July 7th following. He had been employed by defendant for about 18 months prior to his injury, serving the last seven months as first engineer of its electric light plant under one Bennett, who was superintendent of the plant. Prior to being employed by defendant, deceased had had no experience in electrical work, and possessed only such knowledge as he had gained while in the employ of defendant; he had no technical knowledge of electricity or its manufacture, or the machinery used therefor. As first engineer, he had, practically, control and management of the plant. While so employed, it was his duty to work at and near the tube tanks and the arc light switchboard. There were two tube tanks or mercury rectifiers about 18 inches square, and these were placed side by side. The arc light switchboard was from 12 to 20 inches to the nearest tank, and had projecting about 8 or 10 inches from its westerly side two electrodes, carrying constantly 2,300 volts of electricity which furnished the current for defendant's arc lights. A wire, uninsulated and the metal clips on top of these electrodes, which were unguarded, ran underneath these electrodes. On the west side of the building was a washbasin where the tubes from these tanks were carried and washed. The space between this basin and the electrodes was from 3 to 5½ feet. It was deceased's duty to remove these tubes daily from the tanks and carry them to the washbasin and wash them, take them back and replace them in the tanks, and to clean up all the oil on the floor that had dripped from these tubes. It was while deceased was performing this duty that he received a shock of 2,300 volts of electricity, which, a few days thereafter, resulted in his death. There was no eyewitness to the accident. He was found unconscious, with his head badly burned on each side, underneath the switchboard, his body and feet extending toward the west wall of the building. It is conceded that these electrodes were not guarded; that he came in contact with them while in the discharge of his duty, but just what occasioned him to come in contact with them is not clear. The court did not err in overruling the demurrer of defendant to plaintiff's evidence, or in refusing to instruct the jury to return a verdict in its favor. In Rogers et ux. v. O. K. Bus & Baggage Co., 46 Okla. 289, 148 Pac. 837, Ann. Cas. 1917B, 581, we held:

"Under the procedure and practice in this state in trials by jury, it is the well established and settled law that, even though the testimony is undisputed, it should be so convincing that all reasonable men must draw the same conclusion from the facts proven, before the court is authorized to sustain a demurrer to the evidence, or direct a verdict."

Defendant contends that deceased was injured while he was wiping up oil from the floor from the west side and underneath the switchboard close to these electrodes, instead of operating from the east side, which was a safe place for such work, when he came into contact with these electrodes; that it was his duty to work on the safe, instead of the dangerous side, and hence, by selecting the unsafe place to do the work, the city is absolved from all liability. Assuming this to be a correct rule of law, it it not applicable to the facts in this case, as defendant merely assumes this state of facts to exist, without any evidence to support it. There is evidence to the effect that in wiping up the oil from the floor, deceased would work from the east side of the switchboard, opposite to where the electrodes were located; that he was careful in his work. Hence we can only presume, as the jury must have found as a fact, that deceased was on the west side of the switchboard, engaged in either replacing these tubes, or repairing or cleaning up some of the machinery as was required to be done by him, and that he met his death while in the performance of his duty.

Defendant further says that plaintiff should have stopped the machinery rather than run any risk of getting injured. The evidence shows that it was impractical to cut off the current from these electrodes while engaged in dismantling the switchboard, for the reason the lever for that purpose would cause the entire plant to be shut down. In operating this electric plant, defendant assumed the same responsibilities to its employes injured therein as private persons and private corporations running similar plants. Riley v. City of Independence, 258 Mo. 671, 167 S. W. 1022, Ann. Cas. 1915D, 748.

The defendant was engaged in the manufacture and sale of electricity, which is the most deadly and dangerous power recognized as a necessary agency in developing our civilization and promoting our comfort and business affairs, and, as said by Cook J., in Mitchell v. Electric Co., 129 N. C. 166, 39 S. E. 801, 55 L. R. A. 398, 85 Am. St. Rep. 735:

"It [electricity] differs from all other dangerous utilities. Its association is with the most inoffensive and harmless piece of mechanism, if wire can be classified as such, in common use. In adhering to the wire it gives no warning or knowledge of its deadly presence; vision cannot detect it; it is without color, motion, or body; latently and without sound it exists, and, being odorless, the only means of its discovery lie in the sense of feeling, communicated through the touch, which, as soon as done, becomes its victim. In behalf of human life and the safety of mankind generally, it behooves those who would profit by the use of this subtle and violent element of nature to exercise the greatest degree of care and constant vigilance in inspecting and maintaining the wires in perfect condition."

In Anderson v. Jersey City Elec. Light Co., 63 N. J. Law, 390, 43 Atl. 655, the court, speaking of the danger of the use of electricity, says:

"Now the elemental rule is that whoever uses a highly destructive agency is held to a correspondingly high degree of care. Care in this sense means more than mere mechanical skill; it includes circumspection and foresight with regard to reasonably probable contingencies."

The defendant owed its employes the same duty of protection from injury as it did the public. Joyce on Electric Law (2d Ed.) § 663, lays down the rule as follows:

"We have already stated that reasonable care or ordinary care is a degree of care varying with the circumstances of each case, and which, in the case of electrical wires, carrying a dangerous current of electricity, requires the exercise of a high degree of care to keep them properly insulated and so suspended as not to endanger lives. And this is the measure of an electrical company's duty to its employes."

So we say here, as we said in Ladow v. Okla. Gas & Elec. Co., 28 Okla. 15, 119 Pac. 250, that:

"The duty and care demanded is commensurate with the danger and the injury which may follow as a consequence of neglect."

While the evidence is not entirely harmonious as to the feasibility of guarding or incasing these electrodes, there is evidence to the effect that it was, and that had they been guarded, deceased, in working in close proximity to the switchboard, would not have been exposed to this dangerous machinery. That these electrodes were "machinery" within the contemplation of Rev. Laws 1910, § 3746, and should have been properly guarded, cannot be doubted. Said section provides:

"All machines shall be provided with loose pulleys, and all vats, pans, planers, cogs, gearing, belting, shafting, setscrews and machinery of every description shall be properly guarded."

The concession, however, that they were not "properly guarded" admits a violation of said section, and is prima facie evidence of negligence on behalf of defendant. La Dow v. Okla. Gas & Elec. Co., supra; Jones v. American Caramel Co., 225 Pa. 644, 74 Atl. 613. But it is contended, and evidence was introduced tending to support it, that the machinery was installed properly; that it was "standard," and the way most of such machinery was installed. This contention is also without merit; for, in Jones v. American Caramel Co., supra, construing a statute similar to ours, the court said:

"Another requirement of that same section is that 'machinery of every description shall be properly guarded,' and the defendant is not to be relieved from the charge of negligence because, as its learned counsel contend, the plaintiffs failed to show that it was customary in factories to place guards or screens over revolving fans. The legislative mandate is that machinery of every description shall be properly guarded, and customary disregard of this is but customary negligence, rendering every one guilty of it responsible for the consequences resulting directly and solely from it. Ordinary usage which is in disregard of a statutory duty cannot be a test of negligence."

Some complaint is made of failure to give certain requested instructions, and of the giving of certain others. Of such it is sufficient to say that the instructions given were proper to present to the jury the law of the case, and that failure to give the requested instructions was not error.

The judgment of the trial court is affirmed. All the Justices concur.