## OKLAHOMA GAS & ELECTRIC CO. v. OLIPHANT.

No. 25267.   March 26, 1935.

Rehearing Denied May 21, 1935.

Application for Leave to File Second Petition for Rehearing Denied June 18, 1935.

Thurman. Bowman & Thurman and T. Raymond Higgins, for plaintiff in error.

Gomer Smith and W. R. Withington, for defendant in error.

GIBSON, J. The parties will be referred 'to herein as they appeared in the trial court. Plaintiff in error was defendant below and defendant in error was plaintiff below.

Plaintiff brought this action on behalf of herself and minor children in the district court of Oklahoma county. Okla., for the wrongful death of her husband, B. F. Oliphant. She bases her right to recovery upon the following alleged facts:

The deceased was an electrician in the employ of the defendant company. He was sent by the defendant to investigate, and repair, if necessary, defects in the lighting system of a patron. While attempting to make said repairs he came in contact with the high voltage electricity and was killed.

His death was due to the alleged faulty construction of the electrical system at the point where deceased was working. The high voltage, or primary lines, and the low voltage, or secondary lines, were placed in such close proximity to each other on a pole where deceased was working that the secondary line which deceased was attempting to repair had become charged with high voltage electricity from the primary line and had caused his death by electric shock. Such construction constituted negligence on the part of defendant. Oliphant was not an experienced lineman and did not know of the existing danger. Defendant did not exercise due care toward its employee in that it failed to maintain said lines in a proper manner; that such negligence was the proximate cause of Oliphant's death.

Defendant's answer was a general denial and a plea of contributory negligence and assumption of risk on the part of the employee.

The trial resulted in a verdict and judgment for the plaintiff, and defendant appeals.

Defendant presents its numerous assignments of error under eight points or propositions. Assignments 1, 4, 7, and 8 are in substance as follows: The court erred in overruling defendant's motion for a new trial; erred in rendering judgment on the verdict not sustained by the evidence; erred in overruling demurrer to the evidence, and erred in overruling motion for an instructed verdict: and they are presented under point 1, which is as follows:

"As the defendant's alleged negligence must be the proximate cause of the death of Oliphant in order to justify recovery, the burden is on plaintiff to affirmatively prove the causal connection between the alleged negligence and the death. The causal connection cannot be established by speculation and conjecture, and cannot be inferred where the only basis for such inferences are other indulged references and presumptions. (Specifications of error Nos. 1, 4, 7, and 8.) "

The evidence is clear that Oliphant's death was the result of an electric shock. The ground where he worked was covered with water due to a recent heavy rain. He was found dead, lying face downward. His pliers were gripped in his right hand, which was folded under his body. The pliers were cutting into a ground wire leading from the top of the pole heretofore mentioned to an electric switch in the patron's garage. The ground wire was a portion of the secondary system running from the lines of defendant through the switch in the garage and thence

to the patron's house. This wire had been broken or burned off near the connection at the pole. The electric switch in the garage was closed, and the wire found in the pliers was attached to the mechanism at the switch.

The plaintiff's theory is that this wire had come in contact with high voltage electricity escaping from the primary lines and was responsible for the death of Oliphant. The defendant's theory is that, if Oliphant's death was due to electric shock, it was due to the low voltage flowing through the closed switch in the secondary lines, the power being enhanced by the water on the ground; that Oliphant was guilty of contributory negligence in not opening the switch and in not wearing the rubber gloves supplied him by the defendant.

The record reveals positive evidence of the improper construction of the electrical system at the point in question; that the placing of the primary and secondary wires in such close proximity to each other could result in a leakage of high voltage into the low voltage lines. There was some evidence that the system was constructed properly, but this question was submitted to the jury, and in arriving at a verdict it was necessary for them to find that such construction was improper, and they evidently did so find by the verdict. Different conclusions might have been drawn from the evidence introduced, but where competent evidence is introduced from which reasonable men might draw different conclusions, the question of negligence is one for the jury to determine. Cherry v. Arnwine, 126 Okla. 287, 259 P. 233; Griffin Grocery Co. v. Scroggins, 145 Okla. 9, 293 P. 235.

If the primary and secondary wires of the defendant company were as a matter of fact constructed in such a manner as to endanger contact, it follows as a matter of law that the defendant was guilty of negligence. City of Durant v. Allen, 67 Okla. 1, 168 P. 205.

Defendant insists that actionable negligence has not been established, and, in the absence thereof, plaintiff cannot recover. Actionable negligence exists in cases of this nature, as stated by this court in Gulf, C. & S. F. Ry. Co. v. Scroggins, 161 Okla. 294, 18 P. (2d) 873:

"(1) When there exists a duty on the part of the employer to the employee (2) which it failed to perform, (3) and from which failure it proximately resulted that plaintiff was injured. The absence of any one of these elements renders the evidence insufficient upon which to predicate a judgment against the employer."

That there existed a duty on the part of the defendant to the deceased is well settled in this state, and is so expressed by this court in C., R. I. & P. Ry. Co. v. Schands, 57 Okla. 688, 157 P. 349, as follows:

"Although a servant assumes the known and obvious increased hazards of a work which, by reason of the character of the work, becomes more dangerous as the work progresses, a master in such case is not absolved from any duty to furnish a safe place to work, but must use ordinary care to make the place where his servant works as safe as it can be made under the conditions of the work to be performed."

See, also, City of Durant v. Allen supra. It is thus established that the master owes a duty to the servant to use ordinary care in furnishing a safe place to work. This duty was not performed in the present case in that the construction was dangerous.

There remains the third element necessary to recovery; that the failure to provide a reasonably safe place proximately resulted in Oliphant's death. Defendant insists that plaintiff must affirmatively prove the causal connection between the negligence and the death; that causal connection cannot be established by speculation and conjecture; that the jury, in order to find for plaintiff, was obliged to infer that the deadly electrical current did escape into the secondary lines and, in addition thereto, infer the causal connection between such inferred fact and the death of Oliphant.

That there was a leakage of high voltage electricity was established by both direct and circumstantial evidence. There was evidence on the part of electricians that Oliphant, in their opinion, had been killed by high voltage electricity; that the low voltage was hardly sufficient to cause his death. There was evidence to the contrary. The evidence was conflicting as to the proximate cause of death, and the larger portion thereof was circumstantial. In such case circumstantial evidence is proper, and the question of proximate cause should be left to the jury, as was done in this case.

"It is a settled rule of this state that negligence may be established by circumstantial evidence and the reasonable inferences to be drawn therefrom, and that the proximate cause of injury may be determined from circumstantial evidence." Griffin Grocery Co. v. Scroggins, supra.

The inference drawn or the conclusion reached by the jury that there was a leakage of high voltage electricity into the secondary lines was a justifiable conclusion from the evidence as shown by the record, and the inference or conclusion by the jury that Oliphant met his death by such high voltage electricity was justifiable by the evidence.

"Inference on inference is permitted where first inference is justifiable conclusion from evidence and if second inference is justifiable conclusion from first inference." Gypsy Oil Co. v. Ginn et al., 152 Okla. 30, 3 P. (2d) 714.

And such inference may be established by circumstantial evidence. Gypsy Oil Co. v. Ginn et al., supra.

Under proposition 2 the defendant presents assignments 1, 5, and 19: The court erred in overruling motion for a new trial; errors of law occurring at the trial; error in admitting incompetent, irrelevant, and immaterial evidence and testimony. Proposition 2 is as follows:

"The court committed prejudicial and harmful error in permitting, over the objections and exceptions of defendant, certain improper hypothetical questions to be asked and the answers thereto to be given, in the following particulars:

"a. Hypothetical questions must be based only upon facts and evidence, and cannot be based on inference and conjecture.

"b. Expert witnesses should not be permitted to give their opinions, in answer to hypothetical questions, upon the ultimate facts which it is the duty of the jury to determine."

The hypothetical questions asked and answered over the objections of the defendant have been examined, and we find that such questions were based upon positive testimony and upon rational inferences deducible from the testimony, and were proper. Such questions were based upon facts which the jury could have reasonably found to exist from the evidence presented. The rule in this state is expressed in Mead Bros. v. Watts, 135 Okla. 23, 273 P. 207, as follows:

"Hypothetical questions must be based upon facts as to which there is such evidence that a jury might reasonably find that they are established; but it is not necessary that the facts should be clearly proved."

See, also, 22 C. J. 714, sec. 804.

In the present case certain witnesses who qualified as expert electricians were allowed to express their opinions as to whether or not the defendant's electrical system at the point Oliphant met his death was proper electrical construction. The hypothetical questions put to them were based upon facts concerning such construction upon which there had been ample evidence to show the existence of such facts. It is the contention of the defendant that these witnesses were allowed to give their opinions as to the existence of an ultimate fact, and that such evidence amounted to an invasion of the province of the jury. The defendant has stated the general rule. There are, however, certain exceptions to the rule, and the witnesses here fall within the exceptions.

Electricity and its distribution, the construction of lines for the transmission of the same, require expert workmen possessing scientific training. The proper handling thereof is beyond the knowledge of the ordinary man. Prickett v. Sulzberger & Sons Co., 57 Okla. 567, 157 P. 356. The rule governing such witnesses is expressed by this court in Federal Oil & Gas Co. v. Campbell, 65 Okla. 49, 183 P. 894, as follows:

"As a general rule, a witness should not be allowed to give an opinion as to the existence of an ultimate fact, but this rule is subject to the exception that when the matter involves a question of science or peculiar skill to such a degree that when the facts in the case are presented in evidence it is impossible for a person of ordinary understanding and experience to draw a proper conclusion therefrom, then it is permissible for one skilled in that science or art to state his opinion, to be drawn from the facts proven."

Authorities from this state and other jurisdictions are cited by the defendant in support of its contention. In Bilby v. Thomas Gin-Compress Co., 33 Okla. 254, 124 P. 1093, a witness who, as agent, had sold certain machinery to the defendant, was asked:

"I will ask you to state whether or not the machinery that you sold Mr. Bilby was exactly as represented in the contract which he signed?"

This question called for the opinion of the witness on the ultimate fact in issue, and was an invasion of the duty of the jury, therefore erroneous and prejudicial. This case follows the general rule. To determine the question, expert knowledge was unnecessary. The fact to be proven was within the knowledge of the ordinary person.

Another case relied upon by the defendant is Kaw Boiler Works v. Frymyer, 100 Okla. 81, 227 P. 453. In the body of the opinion the court makes the following observation:

"Witnesses were permitted to testify, presumably as experts, that the condenser box

as constructed was dangerous for the safety of the employees of the boiler company."

The court held that this testimony was prejudicial, stating that the witnesses should have detailed the manner of the construction of the box and the jury allowed to say whether or not there was negligence in such construction. The construction of the box was an ultimate fact in the case. The case adheres to the general rule: An examination of the opinion reveals no statement that experts cannot express their opinion on matters of a scientific nature not within the knowledge of the average person. Evidently the court was of the opinion, although not expressed, that the issue involved did not require the testimony and opinion of an expert to clarify the same in the minds of the jury. See Prickett v. Sulzberger & Sons Co., supra.

Concerning the rule on opinion evidence, Joyce on Evidence, sec. 367, page 459, contains the following statement:

"Where the subject under investigation is unfamiliar to the jury, or even to the judge, there would be no adequate mode of arriving at any satisfactory conclusion if expert testimony were rejected; and in recognition of this fact the courts have adopted the rule of admitting opinions of witnesses whenever the subject-matter of inquiry is such that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it without such assistance."

As we have previously stated herein, the business of transmitting electrical current is highly technical and requires skilled experts for the proper construction and maintenance of such systems. What constitutes proper construction and maintenance is not within the knowledge of the ordinary man.

We therefore hold that the opinion of an expert electrician concerning the proper or improper construction of any portion of an electrical transmission system, where such opinion is based upon a hypothetical question, and such question is based upon facts reasonably supported by the evidence, is proper to go to the jury, although such opinion would establish an ultimate fact. In Prickett v. Sulzberger & Sons Co., supra, the court cites the following rule with approval:

"A witness' opinion is admissible in evidence, not only where scientific knowledge is required to comprehend the matter testified about, but also where experience and observation in the special calling of the witness give him knowledge of the subject in question beyond that of persons of common intelligence." (Citing cases from numerous jurisdictions.)

Defendant's point 3 is as follows:

"The general rule, requiring employers to provide employees a safe place in which and safe appliances with which to work, does not apply where the work being performed by the employee consists of inspecting to discover defects and making repairs to make safe the unsafe place and/or appliances. Defendant was under no duty to furnish repairman Oliphant a safe place to be repaired."

This point is in support of defendant's assignments 1, 4, 7, and 8 as set out herein under point or proposition 1.

Where the employer is guilty of negligence as a matter of law in creating a dangerous situation, knowledge of the existence of such situation is imputed to him and it is his duty to notify his employee of such dangerous situation.

"It is the duty of the master to warn his employees of the dangers arising out of the progress of the work, which are known to him and unknown to them, and this is a nondelegable duty." Thurlow et al. v Failing et al., 133 Okla. 277, 272 P. 368.

And, under such circumstances, we see no reason why the degree of skill possessed by the employee should have any bearing on the question, in the absence of notice.

The rule stated in defendant's point 3 does not obtain in this state, except where the employer is unaware of the danger and has not by his own negligence created the dangerous situation, and where there exists no reasonable anticipation of danger.

The case of O'Neil v. Vie, 94 Okla. 68, 220 P. 853. relied on by defendant, presents a situation where the defendant was not guilty of negligence in creating the dangerous situation. Paragraph 8 of the syllabus is as follows:

"The rule of law, making it the duty of the master to use ordinary care to furnish and maintain a reasonably safe place for the servant in which to perform his work, has no application to a situation where from the nature of the employment the object of the work is to make an unsafe place safe, and does not render the master responsible for dangers which necessarily inhere in the work and are only to be guarded against by the care of the servant himself in its performance."

An examination of this case reveals that the "safe place" question was not presented to the jury. The unqualified rule as expressed was unnecessary to the decision. In

this case the plaintiff was employed in a case of emergency to aid in releasing mules entangled in a wreck of one of defendant's trains. The only dangers existing were as patent to the plaintiff as to the defendant; the defendant had not negligently created the situation and had no knowledge of hidden or unusual dangers. In effect, the defendant said to the plaintiff: "Here is a situation we know no more about than you do. We want your help in correcting it." In such case the rule of assumption of risk applies. The safe place rule does not apply. In the present case the question of assumption of risk was placed squarely before the jury.

Defendant's point 4 is as follows:

"The trial court erred in refusing to give defendant's requested instruction No. 8, over defendant's exception. (Specifications of error Nos. 1 and 15.)"

Assignments 1 and 15 are: Error in overruling motion for new trial; and error in refusing to give instruction No. 8.

The requested instruction is as follows:

"You are instructed that in this case a report having been made to the Oklahoma Gas & Electric Company of some trouble which prevented the turning on of lights at the residence of T. P. Martin and the company having sent B. F. Oliphant to ascertain and correct the trouble, you are instructed that the Oklahoma Gas & Electric Company would not be liable for the death of B. F. Oliphant if the same resulted from the defect in the wires or equipment which caused the current of electricity to be cut off from the residence of T. P. Martin.

"Requested by defendant and refused. Defendant excepts.

"Lucius Babcock, Judge."

This instruction merely embraces the safe place rule. It does not state a correct legal principle under the evidence in this case. This question has been discussed and disposed of under a former point.

Point 5 is is as follows:

"The trial court erred in giving, over the objection and exception of defendant, the court's instruction No. 9, without also properly instructing the jury with regards the recognized exception to the 'safe place' rule. (Specifications of error Nos. 1 and 16.)"

Under this point the defendant contends that the court erred in refusing to instruct the jury in substance that the defendant was under no duty to furnish Oliphant a safe place to repair. Obviously, such instruction would not be proper in view of the evidence. If the evidence had been un-

disputed that Oliphant knew of the existence of the alleged dangers, and defendant was not guilty of negligence, the instruction could apply.

Point 6:

"The court erred in refusing to give defendant's requested instruction No. 5. An injury is not proximately caused by an act of alleged negligence unless an ordinary person could have foreseen that, from said negligence, the injury would probably result. (Specifications of error Nos. 1 and 13.)"

It is the contention here that the court, in instructing on the definition of proximate cause, should have included, "and also that the injury to and death of B. F. Oliphant was a result which an ordinary person would anticipate as likely to occur," as was requested by defendant. The instruction complained of follows:

"You are further instructed that to entitle the plaintiff to recover, it is not only necessary that she have established that the defendant was negligent, but, she must also have shown to you by a preponderance of the evidence that the negligence alleged in her petition was the proximate cause of the death of said B. F. Oliphant. By proximate cause means that active efficient cause which sets in motion the train of events which brings about the result without the intervention of any force starting and working independently from a new source."

This instruction states a correct principle of law as applicable to the issues and proof thereon in this case, and is so recognized by this court in Lusk v. Pugh, 71 Okla. 182, 159 P. 855, as follows:

"4. The 'proximate cause' of an event must be understood to be that which in the natural and continuous sequence, unbroken by any independent cause, produces that event, and without which that event would not have occurred."

And in Toombs v. Cummings, 151 Okla. 166, 3 P. (2d) 177, the same rule is expressed, following Lusk v. Pugh, supra.

The definition of proximate cause as given in this instruction is recognized as correct in this and many other jurisdictions. The "foreseen or expected result" clause has been injected in this and other states where the issues and evidence warranted the same. We fail to find any authorities holding that an omission of such clause is prejudicial error under pleadings and evidence similar to the case at bar.

Point 7 follows:

"Defendant was under no duty to warn Oliphant of dangers and defects which were unknown to defendant, it being the duty and job of repairman Oliphant to inspect the electric system and to locate and repair those dangers and defects. (Specifications of error Nos. 1, 4, 5, 7, and 8.)"

This point is answered by this court in Thurlow v. Failing et al., supra, as follows:

"It is the duty of the master to warn his employees of danger arising out of the progress of the work, which are known to him and unknown to them, and this is a nondelegable duty."

The questions whether Oliphant assumed the risks and whether or not he was guilty of contributory negligence were properly left to the jury. The jury has determined the questions adversely to the defendant. The instructions were proper, and the verdict reasonably supported by the evidence. Therefore the verdict will not be disturbed on appeal. C., R. I. & P. Ry. v. Hurst, 129 Okla. 1, 263 P. 113.

Point 8 follows:

"Where, as here, the verdict was so grossly excessive as to indicate that its excessiveness resulted from passion and prejudice, and shocked the trial court's sense of justice, a remittitur should not be ordered, a new trial should be granted for the reason that the vice of prejudice and passion has probably prevented a fair and impartial consideration of the evidence and defenses offered and has therefore permeated and destroyed the value of the verdict. (Specifications of error Nos. 1 and 2.)"

Assignments of error 1 and 2 are here presented, and are stated sufficiently clearly in the language above.

Under section 398, O. S. 1931, the court shall, upon application of the aggrieved party, vacate the verdict and order a new trial where excessive damages appear to have been awarded under the influence of passion and prejudice. The trial court overruled defendant's motion for a new trial on condition that plaintiff file a remittitur of $23,000 of the $43,000 verdict. The remittitur was filed and judgment entered for $20,000.

There is nothing presented by the record indicating to this court that the jury committed some gross and palpable error, or acted under bias, influence, or prejudice, or that they have totally ignored the rule of law by which damages are awarded. Unless one or more of these errors appear, this court will not set aside a verdict on account of excessive damages.

In Ponca City v. Reed, 115 Okla. 166, 242 P. 164, this court expresses the rule as follows:

"A verdict will not be set aside for excessive damages, unless it clearly appear that the jury committed some gross and palpable error, or acted under some improper bias, influence, or prejudice, or have totally mistaken the rules of law by which damages are regulated. City of Tulsa v. Wells, 79 Okla. 39, 191 P. 186."

The trial court in ordering a remittitur acted wholly within its discretionary powers. This discretionary power in the trial court is recognized by this court in Ft. S. & W. Ry. Co. v. Hutchinson, 71 Okla. 139, 175 P. 922, in which case the court says:

"Where the trial court is of the opinion that a verdict is excessive, it may impose upon the plaintiff the alternative of accepting judgment in a reduced amount or of having a new trial granted."

There was ample evidence to justify a verdict for the plaintiff. It is clear that the defendant was answerable in damages to the plaintiff. The trial court evidently considered the amount awarded by the jury excessive. In its discretion it has ordered plaintiff to remit a portion thereof or suffer the inconvenience of a new trial, and the issuing of such an order lay within the sound discretion of the court. We find no abuse thereof.

There being no prejudicial error, the judgment of the trial court is affirmed.

McNEILL, C. J., and RILEY, BUSBY, and PHELPS, JJ., concur.