## POOL v. CITY OF CUSHING et al.

No. 28502. March 14, 1939.

Rehearing Denied April 11, 1939.

Brown Moore and Guy Horton, for plaintiff in error.

S. J. Berton, City Attorney of Cushing, for defendant in error City of Cushing.

Hudson & Hudson, for defendant in error Mattison-Wallock & Company.

DANNER, J. Archie Pool was driving an automobile in the nighttime in the city of Cushing. He ran into an electric light pole and was killed. His mother brought a death action against the city, which owned and used the pole in the operation of its municipally owned electric light plant, and against the construction company which had installed the pole pursuant to its contract of installation. The trial judge sustained the contractor's demurrer to plaintiff's evidence, and directed a verdict for the defendant city at the conclusion of all the evidence. The plaintiff appeals.

We first consider the correctness of directing a verdict in favor of the defendant city. It is elemental that if there was any competent evidence which, if believed by the jury, would reasonably have sustained a verdict against that defendant, the directing of a verdict in its favor was error. In testing whether there was error we therefore do not weigh the evidence, but examine it for the purpose of stating the ultimate facts as favorably to plaintiff as the legally competent evidence would reasonably have permitted if the issue had gone to the jury.

The city had constructed said electric light and power · plant for the purpose of transmitting current throughout the city by means of wires and supporting poles, and selling said current to the inhabitants and using it to light its streets. The poles were placed, by the contractor, exactly where the city had directed them to be placed, and this was in accordance with a plan adopted and approved by the city officials.

It was one of those poles, so placed, with which the decedent collided. Pool was proceeding in his automobile between one and two o'clock a. m., on a dark night, in a southerly direction, along Depot street within the city of Cushing. So proceeding, he crossed North street, which lies east and west and intersects Depot street at a right angle. Going on south, Depot street does not leave North street in exact prolongation of the place it enters North street, but some 20 or 30 feet to the left or east thereof, so that one traveling from north to south on Depot street must swerve to his left in order to continue on his way. It is what is commonly called a jog, or gooseneck intersection. When Pool crossed the intersection and reached a point about ten feet south of the southwest corner thereof, his car crashed into the pole in question. The pole had been set, shortly before that date, at a point between five and seven feet within the traveled portion of the roadway, or, put differently, that distance east of the west edge of the commonly traveled portion. The city disputes that such a conclusion can be drawn from the evidence. It is true that the photographs in the record show the traveled portion passing east of the pole, but said photographs (taken after the event, and some of them with a snow on the ground) do not show what the traveled portion was prior to the placement. And, even if they did, we could not for present purposes ignore the positive statements of at least one, if not more, of the plaintiff's witnesses, who testified as above stated and who did not, as contended by defendant, later qualify said statements. About 15 feet from the pole a small electric light bulb was burning, but it was said by one witness that it threw no light on the pole ·if one were approaching from the north. The night was dark and the pole was black. Pool, who had traveled that route before the pole was placed there, struck the pole with great force, due to the speed of his car and possibly other factors which affect solely the question of contributory negligence, with which we are not concerned. As a result, he died several hours later.

Determination as to whether the city legally could have been found liable on the facts adduced necessitates consideration of two questions. The first of these is whether the city was immune from liability on account of the doctrine announced in Lewis v. City of Tulsa, 179 Okla. 176, 6ᵗ P.2d 675, wherein the rule was stated that:

"A municipality is not liable for negligence or errors in judgment in the adoption of a plan for the construction of a sidewalk; although when a defect created by carrying out the adopted plan and inherent in the plan itself causes a condition so palpably and manifestly unsafe that no prudent man would approve its continued existence, the municipality may be held liable for failure to correct the defect."

In that case a 14-inch drop existed in the sidewalk in the middle of a block at a point where an alley outlet intersected the sidewalk. There was no fault of maintenance or repair in the sense that the material had crumbled or that for other reason the city had allowed the sidewalk at that place to become hazardous to travel. The theory of liability urged in the case was that the city was negligent in the adoption of a plan including such a traffic hazard. It was pointed out in the opinion that the adoption of a plan for sidewalks and streets is a governmental or legislative function, and that the city authorities, in determining what plan should be followed, act in a judicial or legislative capacity; that in so acting they should not be held responsible for a mere failure to use the best judgment in devising a plan unless the condition created thereby is so palpably and manifestly dangerous that all reasonable men must agree that it was unsafe.

It is unnecessary to decide whether the instant case comes within the exception announced by the Lewis Case, that is, whether all reasonable men would agree that the condition was palpably dangerous. The present case does not fall within the doctrine of the Lewis Case at all, regardless of the exception, and that is because the reasons underlying the doctrine of the Lewis Case are not present in this case.

The rule as to immunity in the adoption of a plan applies only to governmental functions. Some of the courts say that the reason for the rule is that in the discharge of governmental affairs the municipality is merely a branch of the state and therefore a part of the state in that regard, and thus not liable as a matter of public policy (Kokomo v. Loy, 185 Ind. 18, 22, 112 N. E. 994); that the rule is one of public policy to protect public funds and public property so that they will not be diverted from the work of government (O'Connell v. Merchants,' etc., Co., 167 Ky. 468, 180 S. W. 845, L. R. A. 1916D, 508). An additional reason which may be suggested is that governmental functions are forced upon a municipality, the municipal authorities often have little or no choice as to whether they will perform these functions, and that therefore municipalities should not be penalized for mere errors in judgment committed in the exercise of such compulsory function, which, also, is legislative or judicial.

Whatever the reasons underlying the rule, the authorities are agreed that the rule applies, when it does apply, only to the adoption of plans in the performance of governmental functions and not to the adoption of plans for the performance of proprietary functions. For a definition of the two kinds of functions, and the distinction between them, see Public Service Co. of Oklahoma v. City of Tulsa, 174 Okla. 58, 50 P.2d 166.

Citing a great many cases, 43 C. J. 922 et seq., after pointing out that in the exercise of governmental functions the municipality's immunity from liability does not depend upon the use of the best means in the conduct of its business, then states, at page 924:

"In its second character above mentioned, that is, in the exercise of its purely municipal functions, or the doing of those things which relate to special or private corporate purposes, the corporation stands upon the same footing with a private corporation, and will be held to the same responsibility with a private corporation for injuries resulting from its negligence while acting within the scope of such municipal power."

19 R. C. L. 1109, states:

"When a function is undertaken by a municipality in its private or proprietary capacity, for the profit, benefit, or advantage of the corporation or of the people who compose it, rather than for that of the public at large, it is liable for the negligence of its employees to the same extent and under the same conditions as a private corporation."

That municipal corporations are not liable for acts of their officers in the exercise of powers of a governmental nature, but are liable for said acts in the exercise of powers which are proprietary in their nature, not for the purpose of governing its people but for the private advantage of the municipality and its inhabitants, is a rule which has frequently been announced by this court. Savage v. City of Tulsa, 174 Okla. 416, 50 P.2d 712; Oklahoma City v. Foster, 118 Okla. 120, 247 P. 80; City of Shawnee v. Roush, 101 Okla. 60, 223 P.

354; Durant v. Allen, 67 Okla. 1, 168 P. 205.

The adoption of a plan as to the grade of a street or sidewalk, as in the Lewis Case, supra, is governmental in its inception, although the maintenance thereof and repair of defects which may later become necessary are ministerial, as pointed out in that case. But the construction and maintenance of an electric light and power plant is not governmental in this state, it is proprietary. Moomaw v. Sions, 96 Okla. 202, 220 P. 865; City of Durant v. Allen, 67 Okla. 1, 168 P. 205. In the Moomaw Case we said that a municipal corporation engaged in the operation of an electric light system exercises business and legislative functions, rather than those strictly governmental, and is governed largely by the same rules as are applicable to individuals engaged in the same business. And in the City of Durant Case we said that the municipality assumes the same responsibilities as to an electric light plant as do private persons and private corporations running similar plants. Obviously, the plan devised for an electric plant and the laying out of its poles and lines is evolved in the performance of a proprietary function. Such functioning was neither governmental in its operation nor in its inception. In view of what has been said above, the court would not be justified in extending the doctrine of legislative or governmental immunity so as to cover functions of the municipality in a purely proprietary capacity.

The second question which must be considered in determining whether there was error in directing a verdict for the city is whether the evidence was sufficient to create an issue on the question of negligence as applied to the city even in its proprietary functions. A municipality must exercise ordinary care to keep its sidewalks and streets in a reasonably safe condition, and is liable for injuries caused by the failure to do so. Town of Norman v. Teel, 12 Okla. 69, 69 P. 791; City of Stillwater v. Swisher, 16 Okla. 585, 85 P. 1110; Town of Canton v. Mansfield, 108 Okla. 60, 233 P. 1071; City of Tulsa v. Wells, 79 Okla. 39, 191 P. 186. There are cases, however, where the defect was so trivial that the court held as a matter of law that the city was not negligent. City of Ada v. Burrow, 171 Okla. 142, 42 P.2d 111; Oklahoma City v. Cantrell, 181 Okla. 56, 72 P.2d 381; Oklahoma City v. Banks, 175 Okla. 569, 53 P.2d 1120.

It should necessitate very little thought or discussion to point out that the evidence was sufficient to go to the jury on the question whether the city was negligent in placing a black pole at a distance between five and seven feet within the traveled portion of a road or street, particularly at a place where there was a jog at the intersection, and where said pole could not easily be seen at night by one approaching from the north, as were the facts in this case if the plaintiff's witnesses be believed. One witness testified: "If you weren't well acquainted down there, it would be hard to miss that post."

Clearly enough we cannot say that all reasonable men would come to the conclusion that the placing of the pole at that point was the exercise of reasonable care. Such being the case, we must hold that the evidence presented an issue which should have been submitted to the jury. Therefore the order complained of was not justified under either of the two possible theories hereinbefore discussed, and the trial judge erred in directing a verdict for the defendant city.

As to the other defendant, the contractor, about the only conclusion we can reach is that the plaintiff has waived any possible error which may have existed in the trial judge's sustaining that defendant's demurrer to the evidence. That defendant has cited, quoted, and discussed certain decisions announcing the rule that after a contractor has turned the work over to the owner or proprietor, and it has been accepted by the latter, the contractor incurs no further liability to third persons by reason of the condition of the work, but that the responsibility then becomes the proprietor's or owner's. The defendant cites Armstrong v. City of Tulsa, 102 Okla. 49, 226 P. 560, wherein that rule was announced in the 3d syllabus. The plaintiff has submitted no argument as to why the rule should not be applied to this case. An abstract citation of certain decisions, without further amplification, is all that the plaintiff has submitted as a reason why, under any theory, the judgment should be disturbed as to the defendant contractor. It is obvious that we could not reverse the judgment as to said defendant without first briefing the case for plaintiff, which we will not do. Wilhite v. Brinn, 178 Okla. 339, 62 P.2d 1240. Our affirmance of the judgment as to this defendant, therefore, does not involve the rule mentioned in the Armstrong Case, supra, or whether it should apply to the instant controversy.

The judgment is affirmed as to the defendant Mattison-Wallock & Company, the contractor. As to the defendant city of Cushing, the judgment is reversed and the cause is remanded for new trial.

BAYLESS, C. J., and CORN, HURST, and DAVISON, JJ., concur.