** Summary ** NORTHERN OKLAHOMA DEVELOPMENT ASSOCIATION NOT STATE AGENCY Northern Oklahoma Development Association is not an agency of the State of Oklahoma. The political entities are the real parties in interest, and liability, if any, would be against the individual members of the association, which, in turn, would depend on whether or not the individual members are, by law, immune from liability. The county members may pay its dues out of county funds, and may use any part of its funds that are not otherwise restricted by law to a particular use. The Attorney General has considered your request for an opinion to the following questions submitted in your letter dated January 25, 1972: "(1) Is the Northern Oklahoma Development Association an agency of the State of Oklahoma? "(2) Does the Northern Oklahoma Development Association enjoy the immunity from civil law suits for the negligent acts of its employees and agents that is accorded by Statute to state agencies? "(3) May the Boards of County Commissioners who are the members of the Northern Oklahoma Development Association pay the assessed dues of the Association out of County funds, and specifically from what funds may these dues be paid?" Concerning your first question, Northern Oklahoma Development Association, hereinafter called NODA, was created under the provisions of Title 74 O.S. 1001 [74-1001] through 1008 (1971). The purpose of the Act is set forth in Section 74 O.S. 1001 [74-1001] which states: "It is the purpose of this act to permit local governmental units to make the most efficient use of their powers by enabling them to cooperate with other localities on a basis of mutual advantage and thereby to provide services and facilities in a manner and pursuant to forms of governmental organization that will accord best with geographic, economic, population and other factors influencing the needs and development of local communities." (Emphasis added) Section 74 O.S. 1003 [74-1003] defines public agency as follows: "(a) For the purposes of this act, the term 'public agency' shall mean any political subdivision of this state; any agency of the state government or of the United States; and any political subdivision of another state." Section 74 O.S. 1004 [74-1004] (a) sets forth the powers authorized and states: "(a) Any power or powers, privileges or authority exercised or capable of exercise by a public agency of this state may be exercised and enjoyed jointly with any other public agency of this state, and jointly with any public agency of any other state or of the United States to the extent that laws of such other state or of the United States permit such joint exercise or enjoyment. Any agency of the state government when acting jointly with any public agency may exercise and enjoy all of the powers, privileges and authority conferred by this act upon a public agency." (Emphasis added) Section 74 O.S. 1004 [74-1004](c) 2 states: "2. The precise organization, composition and nature of any separate legal or administrative entity created thereby together with the powers delegated thereto, provided such entity may be legally created." (Emphasis added) Section 74 O.S. 1005 [74-1005] states in part: ". . . in any case or controversy involving performance or interpretation thereof or liability thereunder, the public agencies party thereto shall be the real parties in interest . . . " (Emphasis added) Section 74 O.S. 1008 [74-1008] provides: "Any one or more public agencies may contract with any one or more other public agencies to perform any governmental service, activity, or undertaking which any of the public agencies entering into the contract is authorized by law to perform, provided that such contract shall be authorized by the governing body of each party to the contract. Such contract shall set forth fully the purposes, powers, rights, objectives and responsibilities of the contracting parties." (Emphasis added) In the case of Rollow v. West, Okl., 479 P.2d 962 (1971), the Court held in Syllabus 1: "Power of eminent domain is not conferred by Interlocal Cooperation Act upon cooperative legal or administrative entities formed there under by voluntary agreement of local governmental units and public agencies." (Emphasis added) This case goes on to say on page 963: "The act by its terms contemplates cooperation or joint exercise between the various governmental entities of activities permitted by the individual entities. The act does not create new powers to be exercised independently by the legal or administrative agency." Upon checking with the State Budget Office, that office had no record of any agency under the designation of Northern Oklahoma Development Association that received any annual appropriation. There is nothing in the statutes creating a separate public agency of the State as such. An entity may be created, under this act, but it does not take on the characteristics of a separate agency of the State of Oklahoma. The only entity that is created is an association made up of separate governmental units, and the State of Oklahoma is not a party to this association. It is therefore the opinion of the Attorney General that your first question be answered in the negative and that the Northern Oklahoma Development Association is not an agency of the State of Oklahoma. With reference to your second question, Section 1004(3) states: "(e) No agreement made pursuant to this act shall relieve any public agency of any obligation or responsibility imposed upon it by law except that, to the extent of actual and timely performance thereof by a joint board or other legal or administrative entity created by an agreement made hereunder, said performance may be offered in satisfaction of the obligation or responsibility." (Emphasis added) Section 74 O.S. 1005 [74-1005] states in part: ". . . that in any case or controversy involving performance or interpretation thereof or liability thereunder, the public agencies party thereto shall be real parties in interest . . ." Thus, the real issue is not whether NODA is immune from liability, but whether or not its members are immune from liability. Traditionally, the State of Oklahoma is immune from liability unless expressly waived by a general act of legislation. The case of State ex rel Department of Highways v. McKnight, Okl., 43 O.B.A.J. 188 (1972), the Oklahoma Court held that the State of Oklahoma is immune from suit unless it expressly consents to being sued. This case cited the case of Henry v. Oklahoma Turnpike Authority, Okl., 478 P.2d (1970) which held that the State of Oklahoma is immune from suit without its consent. The State v. McKnight case, supra, also cited other earlier Oklahoma cases involving immunity from suit. As for counties, counties have traditionally also been immune from liability for torts. In the case of U.S. v. Board of Commissioners of Grady County, Okl., 54 F.2d 593 (1932) the 10th Circuit Court held that under Oklahoma law, a county is not liable for torts of its agents, in absence of a statute imposing liability. See also Haslett v. Board of Commissioners of Muskogee County, 168 Okl. 290, 32 P.2d 940
(1934) and Board of County Commissioners of Harmon County v. King, 194 Okl. 593, 153 P.2d 483 (1944). In actions upon contracts, counties have been held liable with certain limitations. In the case of Jackson v. Board of County Commissioners of Garvin County, 66 Okl. 75,167 P. 227 (1917) the Court held that the Board of County Commissioners cannot make binding contract for services for county, unless contract is specifically authorized by law or necessarily incident to performance of duties specifically lodged in Board by law. As for municipalities, a municipality is not liable for tort if the function involved is a governmental function. See Pool v. City of Cushing, 184 Okl. 577, 89 P.2d 294 (1939). A municipality is liable on contracts if the contracts thereunder are legal. See Wichita Finance and Thrift Co. v. City of Lawton, 131 F. Supp. 788 (D.C. Okl. 1955). Therefore, it is the opinion of the Attorney General that your second question be answered as follows: Concerning the liability of NODA, the political entities that make up the association are the real parties in interest, and liability, if any, would be against the individual members of the association. This, in turn, would depend on whether or not the individual members are, by law, immune from liability. With reference to your third question, Section 74 O.S. 1007 [74-1007] states: "Any public agency entering into an agreement pursuant to the act may appropriate funds and may sell, lease, give, or otherwise supply the administrative joint board or other legal or administrative entity created to operate the joint or cooperative undertaking by providing such personnel or services therefor as may be within its legal power to furnish." This would allow the County to appropriate funds for the use of the Association. The County could expend any portion of its funds unless such funds are otherwise restricted by law for a specified use. It is therefore the opinion of the Attorney General that your third question be answered as follows: The County may pay its dues out of county funds, and may use any part of its funds that are not otherwise expressly waived by a general act of legislation. The case of State ex rel Department of Highways v. McKnight, Okl., 43 O.B.A.J. 188 (1972), the Oklahoma Court held that the State of Oklahoma is immune from suit unless it expressly consents to being sued. This case cited the case of Henry v. Oklahoma Turnpike Authority, Okl., 478 P.2d (1970) which held that the State of Oklahoma is immune from suit without its consent. The State v. McKnight case, supra, also cited other earlier Oklahoma cases involving immunity from suit. As for counties, counties have traditionally also been immune from liability for torts. In the case of U.S. v. Board of Commissioners of Grady County, Okl., 54 F.2d 593 (1932) the 10th Circuit Court held that under Oklahoma law, a county is not liable for torts of its agents, in absence of a statute imposing liability. See also Haslett v. Board of Commissioners of Muskogee County, 168 Okl. 290, 32 P.2d 940
(1934) and Board of County Commissioners of Harmon County v. King, 194 Okl. 593, 153 P.2d 483 (1944). In actions upon contracts, counties have been held liable with certain limitations. In the case of Jackson v. Board of County Commissioners of Garvin County, 66 Okl. 75,167 P. 227 (1917) the Court held that the Board of County Commissioners cannot make binding contract for services for county, unless contract is specifically authorized by law or necessarily incident to performance of duties specifically lodged in Board by law. As for municipalities, a municipality is not liable for tort if the function involved is a governmental function. See Pool v. City of Cushing, 184 Okl. 577, 89 P.2d 294 (1939). A municipality is liable on contracts if the contracts thereunder are legal. See Wichita Finance and Thrift Co. v. City of Lawton, 131 F. Supp. 788 (D.C. Okl. 1955). Therefore, it is the opinion of the Attorney General that your second question be answered as follows: Concerning the liability of NODA, the political entities that make up the association are the real parties in interest, and liability, if any, would be against the individual members of the association. This, in turn, would depend on whether or not the individual members are, by law, immune from liability. With reference to your third question, Section 1007 states: "Any public agency entering into an agreement pursuant to the act may appropriate funds and may sell, lease, give, or otherwise supply the administrative joint board or other legal or administrative entity created to operate the joint or cooperative undertaking by providing such personnel or services therefor as may be within its legal power to furnish." This would allow the County to appropriate funds for the use of the Association. The County could expend any portion of its funds unless such funds are otherwise restricted by law for a specified use. It is therefore the opinion of the Attorney General that your third question be answered as follows: The County may pay its dues out of county funds, and may use any part of its funds that are not otherwise restricted by law to a particular use. (Todd Markum)