VOLUNTEER AUXILIARY POLICE FORCE A city or municipality in this state may properly form an auxiliary police force but there are certain limitations upon the functions to be performed by the members of said force. It is necessary that members of an auxiliary police force be qualified under the provisions of 70 O.S. 3311 [70-3311] (1971) except where performing emergency functions as contemplated in the "Civil Defense Act", 63 O.S. 683.1 [63-683.1] (1971), et seq. In providing police protection and performing police functions a municipality is cloaked with governmental immunity and is not liable for the conduct of members of its police force while in the performance of duties imposed by law. An auxiliary police force, which has received the requisite training or which has been trained to perform certain police duties during emergency situations, would be covered under the same cloak of immunity while in the performance of police functions on behalf of the municipality. After October 1, 1975, 11 O.S. 16.4 [11-16.4] (1975) will require all municipalities within the State of Oklahoma to provide liability insurance, or self insurance, for all persons performing police functions on behalf of a municipality. The Attorney General has considered your request for an opinion wherein you ask the following questions: "(1) May a City in this state properly form an 'auxiliary police force' consisting of local volunteer citizens called upon to assume — in whole or in part — the duties and responsibilities of the regular officers within its police department? "(2) If a City properly may form an auxiliary police force, what are the necessary qualifications, if any, of its members and the parameters of their responsibilities, duties and authority? "(3) If a City forms an auxiliary police force, what is the nature and extent of its liability for the conduct of members thereof?" There is little doubt that a city in this State may form an "auxiliary police force", but in order to determine the duties, authority and responsibilities of such an organization a review of several statutes is required. The only specific statutory provision granting any authority to municipal auxiliary police is found in the Oklahoma Civil Defense and Emergency Resources Management Act of 1967 at 63 O.S. 683.1 [63-683.1] (1971), et seq. Section 63 O.S. 683.11 [63-683.11] provides in pertinent part: "(a) Each political subdivision of this state is hereby authorized and directed to establish a local organization for civil defense in accordance with the State Civil Defense Plan and Program. Such political subdivision may confer or authorize the conferring upon members of the auxiliary police the powers of police officers, subject to such restrictions as shall be imposed." (Emphasis added) Title 63 O.S. 683.3 [63-683.3] (1971) defines "civil defense" and states: " 'Civil Defense' shall mean the preparation for the carrying out of all emergency functions, other than functions for which the military services are primarily responsible, by organized and trained volunteer civilian persons . . . These functions include without limitation, firefighting services, police services . . . and other functions related to civilian protection, together with all other activities necessary or incidental to the preparation for and carrying out of the foregoing functions." It is clear that the Legislature intended in the above sections that trained civilian volunteers carry out various functions, including police services, during times of extreme emergency. In your first question, you indicate that an auxiliary police force might consist of local volunteer citizens called upon to assume, in whole or in part, the duties and responsibilities of regular officers within a police department. In this regard, your attention is invited to 70 O.S. 3311 [70-3311](g)(4) (1971) wherein the following language appears: "For purposes of this section a police or peace officer is defined as a full-time duly appointed or elected officer, whose duties are to preserve the public peace, protect life and property, prevent crime, serve warrants, and enforce all laws and city ordinances of this state, and any political subdivision thereof; . . . " Elsewhere in Section 70 O.S. 3311 [70-3311] the following language appears: "No person shall receive a permanent appointment as a police or peace officer in this state as defined in paragraph 4 of this section, unless he has undergone evaluation similar to the Minnesota multi phasic personality inventory or its equivalent, as determined by the Council on Law Enforcement Education and Training and has been awarded a certificate, attesting to his satisfactory completion of a basic police course of not less than One Hundred Twenty (120) hours of accredited instruction from the Southwest Center for Law Enforcement Education or a curricula or course of study approved by the Southwest Center for Law Enforcement Education." A city or municipality may properly form an "auxiliary police force" but there are definite statutory limitations upon the functions to be performed by said force. The statutory limitations are specifically discussed in respect to your Questions 2 and 3. It appears that a person may not perform the regular duties or assume the responsibilities of a police officer without first meeting the above requirements. It also appears that the only exception to this requirement is found under the "Civil Defense Act". This analysis of the law is dispositive of your Question No. 2. Although a city may properly form an auxiliary police force, the members of said force, in order to perform the duties of police officers, must meet the requirements of 70 O.S. 3311 [70-3311] or in cases of extreme emergency may perform police functions pursuant to 63 O.S. 683.1 [63-683.1] (1971), et seq. It should also be noted that when an auxiliary police force exercises the duties of police officers and performs police functions 63 O.S. 683.3 [63-683.3] (1971) contemplates that said auxiliary officers must be trained. The extend of the training necessary is not specifically set out by statute but should be consistent with and provided by the Civil Defense Program in the locale. It should also be recognized that in order for members of an auxiliary police force to receive training at the Southwest Center for Law Enforcement Education and Training, said officer must be a "full time duly appointed . . . officer" under the provisions of 70 O.S. 3311 [70-3311](g)(4) (1971) cited supra. Therefore, unless an auxiliary policeman is appointed on a full-time basis he would not be eligible for the training necessary to be awarded a basic police course certificate. The control of the functions of the police and of peace officers and the provision of police services is a matter of statewide concern and is, therefore, governmental in character. Generally, see 62 C.J.S. Municipal Corporations, 198, p. 370. If a municipality in fulfilling a governmental rather than a proprietary function, such as the provision of police services, should exceed the authority granted it by the Legislature the municipality would be no longer protected by the immunity attaching to governmental activities. Since the provision of police services is a governmental function, a municipality acts under the cloak of governmental immunity in the performance of police functions. In 63 C.J.S. Municipal Corporations, 746, page 30, the following language appears: "The functions falling into the first class are political and governmental, and ordinarily no liability attaches to it at common law, either for nonuser or misuser of the power, for the city in exercising governmental functions does so under delegated powers from the state or as an agency of the sovereign and acts under the same immunity, if any, enjoyed by the state. Such immunity from liability does not depend on the use of the best, or of any particular, means in the conduct of the municipality's governmental business. The exemption from liability is not affected by the degree of negligence, whether ordinary or gross, although it has been intimated that the rule would be otherwise were the injury caused by wilful, wanton, or reckless conduct. It has been held that the entity of a municipality is not limited in cases of negligence, but applies as well to deliberate tortious acts. However, the doctrine does not relieve a municipality from its obligation to perform its governmental duty, but merely relieves it from liability for a resulting injury." In the case of City of Purcell v. Hubbard, Okl., 401 P.2d 488, at page 492, the following language appears: "The rule of immunity of municipal corporations from liability for damages for misfeasance or nonfeasance arising out of exercise of governmental functions is recognized and applied in this jurisdiction. Oklahoma City v. Baldwin, supra, Pool v. City of Cushing, et al., 184 Okl. 577,89 P.2d 294; City of Tulsa v. Wheetley, 187 Okl. 155,101 P.2d 834. In the Pool case, supra, both the rule relative to immunity from liability in the conduct of governmental affairs, as contrasted with the non-immunity where the municipality acts in proprietary affairs, and the reasons therefor are stated: '(1) The rule as to immunity in the adoption of a plan applies only to governmental functions. Some of the courts say that the reason for the rule is that in the discharge of governmental affairs a municipality is merely a branch of the state and therefore a part of the state in that regard and thus not liable as a matter of public policy (City of Kokomo v. Loy,185 Ind. 18, 22, 112 N.E. 994); that the rule is one of public policy to protect public funds and public property so that they will not be diverted from the work of government (citation omitted). An additional reason which may be suggested is that governmental functions are forced upon a municipality, the municipal authorities often have little or no choice as to whether they will perform these functions and that therefore municipalities should not be penalized for mere errors in judgment committed in the exercise of such compulsory functions, which, also, is legislative or judicial.' * * * "The generally accepted rule of law has been that a municipality exercising governmental functions represents the sovereignty of the state; and, absent statutory enactment waiving or removing such immunity, a municipality cannot be liable in damages for injury resulting from misfeasance or nonfeasance in the discharge of such governmental functions. . . ." In light of the above authorities, it is clear that if a municipality forms an auxiliary police force and follows the requirements of the statutes concerning the training of the members thereof, the municipality is immune from liability for the conduct of the members of said auxiliary force. However, should a municipality form an auxiliary police force and not conform to state law concerning training requirements for members of said auxiliary force, the activity would take on the character of a proprietary function and subject the city to liability for the conduct of members of the force. A recent enactment of the Oklahoma Legislature must also be considered in answer to your third question. The First Regular Session of the Thirty-fifth Oklahoma Legislature in Senate Bill No. 3 (codified as 11 O.S. 16.4 [11-16.4] (1975)), provided: "Every city or town shall provide liability insurance, or self insurance, in no less an amount than Ten Thousand Dollars ($10,000.00) one person, Twenty Thousand Dollars ($20,000.00) two or more persons, each occurrence for bodily injury and Five Thousand Dollars ($5,000.00) property damage, each occurrence, to compensate persons for bodily injury or property damage proximately caused by any negligent act of a fire department employee while in the performance of his duties, police department employee while in the performance of his duties or other municipal employees and officials while in the performance of duties constituting a governmental function of a municipality. The governmental immunity to tort action of a city shall be waived to the extent of the amount of insurance or city provided self-insurance authorized and required herein, but in no case shall such immunity be waived in excess of the coverage, force or effect of such insurance. To the extent that an insurer has provided indemnity for the said employees or any of them for acts proximately caused by the negligence of such employee the said insurer may not, in an action, claim the governmental immunity of a city as a defense. A jury verdict that exceeds the maximum amount of applicable insurance authorized and directed herein shall be reduced by the judgment or award of the court to the applicable limits of coverage authorized and directed herein." The above statute becomes effective on October 1, 1975. After October 1, 1975, all municipalities will be responsible for providing liability insurance or self-insurance for the acts of persons performing police department functions. In the case of an auxiliary police force meeting the requirements of 70 O.S. 3311 [70-3311] (1971) or performing emergency functions as contemplated by 63 O.S. 683.1 [63-683.1] (1971) et seq., the above cited statute would apply. It is, therefore, the opinion of the Attorney General that your questions must be answered as follows: A city or municipality in this state may properly form an auxiliary police force but there are certain limitations upon the functions to be performed by the members of said force. It is necessary that members of an auxiliary police force be qualified under the provisions of 70 O.S. 3311 [70-3311] (1971) except where performing emergency functions as contemplated in the "Civil Defense Act", 63 O.S. 683.1 [63-683.1] (1971), et seq. In providing police protection and performing police functions a municipality is cloaked with governmental immunity and is not liable for the conduct of members of its police force while in the performance of duties imposed by law. An auxiliary police force, which has received the requisite training or which has been trained to perform certain police duties during emergency situations, would be covered under the same cloak of immunity while in the performance of police functions on behalf of the municipality. After October 1, 1975, 11 O.S. 16.4 [11-16.4] (1975) will require all municipalities within the State of Oklahoma to provide liability insurance, or self-insurance, for all persons performing police functions on behalf of a municipality. (Michael Cauthron) ** SEE: OPINION NO. 75-211 (1975) ** ** SEE: OPINION NO. 78-150 (1978) **